STATE, Respondent, v. DRIVER, Appellant.

*No. State 54. Submitted under sec. (Rule) 251.54 May 3, 1973.—*
*Decided June 5, 1973.*
(Also reported in 207 N. W. 2d 850.)

36

38

For the appellant the cause was submitted on the brief of *Theodore W. Harris* of Racine.

For the respondent the cause was submitted on the brief of *Robert W. Warren,* attorney general, and *Robert D. Martinson,* assistant attorney general.

HEFFERNAN, J.    Defendant contends that the prosecution's use of a compelled breathalyzer test to obtain his conviction violated his privilege against self-incrimination, guaranteed by the fifth amendment to the United States Constitution.[1]  Both defendant and the state agree that resolution of this issue is governed by principles expressed in *Schmerber v. California* (1966), 384 U. S. 757, 86 Sup. Ct. 1826, 16 L. Ed. 2d 908.

In *Schmerber,* the defendant was arrested at a hospital while receiving treatment for injuries sustained in an accident involving an automobile he had been driving. At the direction of a police officer, a hospital physician withdrew a blood sample from the defendant's body. Analysis of the sample indicated intoxication, and this

[1] Under the due process clause of the fourteenth amendment, the fifth amendment privilege is applicable to state prosecutions. *Malloy v. Hogan* (1964), 378 U. S. 1, 84 Sup. Ct. 1489, 12 L. Ed. 2d 653. The Wisconsin Constitution provides for the same privilege. Wis. Const., art. I, sec. 8.

evidence was subsequently received, over defendant's objection, at a trial resulting in his conviction for drunk driving.

The United States Supreme Court affirmed the conviction, finding no violation of the defendant's fifth amendment privilege in the state's use of the blood test results. The court recognized that the privilege protects the accused from being compelled to testify against himself or otherwise provide the state with evidence of a testimonial or communicative nature. The court concluded, however, at page 764:

"On the other hand, both federal and state courts have usually held that it [the fifth amendment] offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture. The distinction which has emerged, often expressed in different ways, is that the privilege is a bar against compelling 'communications' or 'testimony,' but that compulsion which makes a suspect or accused the source of 'real or physical evidence' does not violate it."

Concluding that the blood test had merely made Schmerber's body a source for physical evidence and did not involve compulsion to provide testimonial information, the court found no violation of the fifth amendment.[2]

Defendant concedes that the arresting officers could have compelled him to submit to a blood test without running afoul of his testimonial privilege. He contends, however, that use of a breathalyzer was impermissible, since it required him to actively participate by blowing

---

[2] Employing identical reasoning, this court, prior to *Schmerber*, held that the privilege against self-incrimination contained in the Wisconsin Constitution posed no bar to the use of compelled blood tests as proof of intoxication. *State v. Kroening* (1956), 274 Wis. 266, 79 N. W. 2d 810, 80 N. W. 2d 816.

into the apparatus and was thus unlike the *Schmerber* blood test, in which the suspect was merely a passive donor. In addition, he appears to argue that, since the privilege extends to oral communication, some significance should be attached to the fact that the breathalyzer test required use of his mouth and lungs. We find this a bizarre distinction. As in *Schmerber,* the results of the test are not based on any:

"[T]estimonial capacities . . . ; indeed, his participation, except as a donor, was irrelevant to the results of the test, which depend on chemical analysis and on that alone." (P. 765)

While the breathalyzer test is expedited by the volitional expulsion of a large quantity of inhaled breath, the results of that test will not be colored, as might a testimonial utterance, by coercion or psychological pressures. As was well said by the lyricist of Lerner and Loewe's, "My Fair Lady," respiration is typified as, ". . . second nature to me now. Like breathing out and breathing in."

Insofar as the authentication of a breath specimen and subsequent test result is concerned, we see no distinction between the taking of a blood specimen or a breath sample. The authentication of each presents a question of physical custody and the credibility of those who administer the test and interpret the result.

Neither of defendant's attempts to distinguish *Schmerber* from the present case is persuasive. As long ago as *Holt v. United States* (1910), 218 U. S. 245, 31 Sup. Ct. 2, 54 L. Ed. 1021, the United States Supreme Court held that the fifth amendment posed no bar to compelling an accused to participate in a physical test designed to produce evidence of guilt. In that case, the defendant had been compelled to try on a blouse to demonstrate whether it fit. The court held that his fifth amendment privilege had not been violated when the trial court permitted

a witness to testify that the blouse fit, thereby contributing to the prosecution's proof.

Since *Schmerber,* the United States Supreme Court has continued to hold that an accused may be compelled to lend his person as the source of nontestimonial evidence. Thus, in *United States v. Wade* (1967), 388 U. S. 218, 87 Sup. Ct. 1926, 18 L. Ed. 2d 1149, the court found no violation of the fifth amendment when a defendant was compelled to appear in a lineup and utter the same words allegedly spoken by a bank robber. In *Gilbert v. California* (1967), 388 U. S. 263, 87 Sup. Ct. 1951, 18 L. Ed. 2d 1178, the evidentiary use of handwriting exemplars taken by police during a custodial interrogation was upheld. Most recently, in *United States v. Dionisio* (Jan. 22, 1973), 410 U. S. 1, 93 Sup. Ct. 764, 35 L. Ed. 2d 67, the court concluded that a suspect could be required to furnish tape-recorded voice exemplars for use by a federal grand jury, which intended to compare the samples with a recording of a lawfully obtained wiretap. In all of these cases, the supreme court found that the defendant had merely been made the source of physical evidence and had not been compelled to give testimony in violation of his privilege.

Here, there is no evidence that defendant's confrontation with the police resulted in being compelled to give verbal testimony evidencing his guilt. Instead, he was merely required to provide physical evidence in the form of his breath. *Schmerber* and its progeny control this case. Since no testimonial evidence was involved, the questions of self-incrimination and the defendant's fifth amendment rights are not at issue.

Defendant also argues that he was entitled to the presence of counsel when the test was performed. He again relies on the erroneous contention that the test impinged on his fifth amendment privilege against self-incrimination. Since the privilege was not involved in defendant's

choice to submit to the test, there is no merit to his argument that counsel was necessary in order to advise him in making that choice.

In *Gilbert v. California* (1967), 388 U. S. 263, 87 Sup. Ct. 1951, 18 L. Ed. 2d 1178, the court rejected the argument that an accused was entitled to the presence of counsel when he was compelled to give handwriting exemplars during a police interrogation.

Courts in other states have uniformly held that there is no right to counsel during the taking of blood tests for intoxication. *State v. Stevens* (Maine, 1969), 252 Atl. 2d 58; *State v. Petkus* (1970), 110 N. H. 394, 269 Atl. 2d 123, certiorari denied, 402 U. S. 932, 91 Sup. Ct. 1522, 28 L. Ed. 2d 867; *Law v. City of Danville* (1972), 212 Va. 702, 187 S. E. 2d 197; *People v. Lane* (1966), 240 Cal. App. 2d 634, 49 Cal. Rptr. 712; *State v. Werlinger* (1969), 84 S. D. 282, 170 N. W. 2d 470; *State v. Stevens* (Mo. 1971), 467 S. W. 2d 10, certiorari denied, 404 U. S. 994, 92 Sup. Ct. 531, 30 L. Ed. 2d 546.

The defendant's implied reliance upon *Miranda v. Arizona* (1966), 384 U. S. 436, 86 Sup. Ct. 1602, 16 L. Ed. 2d 694, is also misplaced. *Miranda* prohibits custodial interrogation. The stipulated facts reveal no interrogation whatsoever. The inquiry at this stage of the pretrial proceedings was limited to the verification of a suspected physical condition. This was accomplished without recourse to the questioning of the defendant and without reliance on any testimonial utterance.

While *Schmerber* found no fifth amendment limitation on compulsory blood tests, the case concluded that such a test constitutes a search and seizure, subject to scrutiny under the fourth amendment standard of reasonableness. More than ten years previously, this court had come to a similar conclusion in *State v. Kroening* (1956), 274 Wis. 266, 79 N. W. 2d 810, 80 N. W. 2d 816, holding that a compelled blood test for intoxication was governed by the

search and seizure clause of the Wisconsin Constitution, art. I, sec. 11.

The *Schmerber* court found that the defendant's initial arrest at the hospital was supported by probable cause. The arresting officer, who had arrived at the scene shortly after the accident, smelled liquor on the defendant's breath, and testified that defendant's eyes were " 'bloodshot, watery, sort of a glassy appearance.' " (P. 769) Later, at the hospital, the officer observed similar symptoms of intoxication and thereupon placed the defendant under arrest.

The court rejected the argument that the subsequent blood test was merely a search incident to an arrest, finding that probable cause to arrest would not alone justify all intrusions beneath the body's surface. Nevertheless, the court determined that, under the particular circumstances of a blood test for intoxication, the exigencies of the situation reasonably permitted the test to be taken without prior approval by a magistrate. Noting the rapidity with which alcohol is metabolized, the court found that the arresting officer was confronted with an "emergency," in which the delay necessary to obtain a warrant threatened the destruction of the evidence. Further, the court found that the blood test used was a reasonable one, performed by a physician in a hospital environment according to accepted medical practices. On the basis of this reasoning, the court found the blood test to have been free of any infirmity under the fourth amendment.

In *State v. Kroening, supra,* this court analogized blood tests for intoxication to searches incident to an arrest. In that case the blood test was found to have been improper, since the defendant had not been placed under arrest, and the court doubted whether probable cause was demonstrated by the record.

In this case, counsel concedes, however, that the patrolman had probable cause for the initial arrest and that the defendant could have been required to take a blood test. As in *Schmerber*, the same time pressures operated to necessitate the test being taken as soon after arrest as possible. Indeed, it is difficult to discern any grounds for defendant's contention that the breathalyzer test violated his fourth amendment rights, whereas a blood test would not. As the circuit court noted, a breathalyzer examination involves, by far, a less obnoxious invasion of the suspect's person, lacking either the pain or possible risk of infection, which may accompany the extraction of blood. Moreover, the stipulated facts disclose no improper police conduct in the administration of the test. Defendant's arrest was founded on probable cause. Accordingly, the administration of a breathalyzer test was not an illegal search of his person.

We find no violation of any of the defendant's constitutional rights. The trial court denied the motion to suppress the results of the breathalyzer test. That evidence, together with the admitted fact that the defendant smelled of an alcoholic beverage and operated his vehicle in an erratic manner, was sufficient for the trier of the fact to find the defendant guilty of operating a motor vehicle while under the influence of an intoxicant.

*By the Court.*—Judgment affirmed.