STATE, Plaintiff-Appellant, v. BENTLEY,
Defendant-Respondent.

Court of Appeals

*No. 79–639–CR. Submitted on briefs September 25, 1979.—*
*Decided October 26, 1979.*
(Also reported in 286 N.W.2d 153.)

For the appellant the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Chris Heikenen,* assistant attorney general.

For the respondent the cause was submitted on the brief of *Edward Conley* of Rice Lake.

Before Donlin, P.J., Foley, J., and Dean, J.

DONLIN, P.J.   Richard Bentley is charged with two counts of homicide by intoxicated use of a motor vehicle[1] and three counts of injury by intoxicated use of a motor vehicle.[2]  The charges arose from an automobile accident that occurred on August 19, 1978.  Approximately three

---

[1] Section 940.09, Stats.

[2] Section 940.25, Stats.

and one-half hours after the accident, a hospital technician withdrew a sample of blood from Bentley without his consent at the direction of police officers. Bentley moved to have the results of the blood alcohol analysis suppressed. The court granted his motion based on its finding that there had not been probable cause and arrest before the blood was drawn. The state appeals that ruling.

The accident occurred at a rural Barron County intersection controlled by four-way stop signs. A vehicle which was stopped at the intersection was struck from the rear. Bentley allegedly was driving the vehicle that struck the stopped vehicle. The accident was reported from a tavern located at the intersection.

When they arrived at the accident scene, police officers aided the injured and cleared the intersection. While at the scene, one of the officers was informed by the driver of a car that had been following Bentley's car just prior to the accident, that the Bentley vehicle had been wandering across the centerline and onto the shoulder of the roadway. By this time, Bentley had been removed from the scene of the accident by ambulance. The ambulance took Bentley to a Rice Lake hospital and then to an Eau Claire hospital. At the Rice Lake hospital, Bentley told medical personnel that he was the driver of a vehicle involved in an accident.

When the Barron County authorities learned that Bentley had been taken to an Eau Claire hospital, they requested the Eau Claire Police Department to obtain a blood sample from Bentley for the purpose of a blood alcohol analysis. Two Eau Claire police officers went to the Eau Claire hospital and spoke with Bentley. They observed that Bentley had the odor of alcohol on his breath. They asked Bentley if he would consent to the taking of a blood sample, and when he refused, they directed hospital personnel to take the blood sample.

After the blood sample was obtained, the officers left the hospital.

Bentley's motion to suppress was based on his argument that there was no valid arrest prior to the taking of the blood sample. He argues that taking the blood without a valid arrest is contrary to the requirements of art. 1, §11 of the Wisconsin Constitution.

Bentley relies on *State v. Kroening*,[3] where the court held inadmissible the results of a blood alcohol test made on blood taken from an unconscious defendant. The blood was drawn in the hospital within two hours of an automobile accident. In that case, the blood was drawn at the direction of the district attorney. The court held that the results of the test were inadmissible, as the taking of the blood sample was a search and seizure not incident to arrest. Subsequently, it has been pointed out that in *Kroening* the court was faced with a situation where the defendant was neither under arrest nor was there probable cause for arrest.[4] Our supreme court recently said that under the limited facts of that case there was an unlawful search.[5]

The state does not contest the finding of the trial court that there was no arrest of Bentley in this case. The state contends that the drawing of the blood sample was based upon the same probable cause that would support a lawful arrest. It argues that where there is probable cause for arrest, there is probable cause for a search.

The taking of the blood sample from Bentley is a search and seizure within the meanings of the United States and Wisconsin Constitutions.[6] Such a search may

[3] 274 Wis. 266, 79 N.W.2d 810 (1956).

[4] *State v. Driver*, 59 Wis.2d 35, 207 N.W.2d 850 (1973).

[5] *State v. Doe*, 78 Wis.2d 161, 254 N.W.2d 210 (1977).

[6] *Schmerber v. State of California*, 384 U. S. 757 (1966); *Waukesha Memorial Hosp., Inc. v. Baird*, 45 Wis.2d 629, 173 N.W. 2d 700 (1970).

be conducted if it is incident to arrest.[7] Logic dictates that where there is probable cause for arrest, one need not perform the formalistic rituals of arrest in order to obtain a blood sample and thus preserve possible evidence of a crime.

Probable cause to arrest, standing alone, does not justify taking a blood sample for a blood test without first obtaining a search warrant.[8] Such a search and seizure is further subject to scrutiny under the fourth amendment standard of reasonableness.[9] This standard is also found in art. 1, §11 of the Wisconsin Constitution.[10] To be admissible, in addition to the probable cause to arrest, the blood test must have been required by the exigencies of the situation and the sample must have been drawn in a reasonable manner.[11]

Here, probable cause to conclude that a blood test might furnish evidence of a crime was provided by: the two-vehicle accident which resulted in death and injury to passengers; the manner in which the accident occurred, that is the striking of a vehicle stopped at a stop sign from the rear; the information from a witness who had observed Bentley's vehicle travelling in an erratic manner, crossing the centerline and going onto the shoulder of the road just prior to the accident; the observations of the police officers that Bentley had the odor of alcohol on his breath.

Blood rapidly metabolizes alcohol after a person ceases drinking; thus creating an exigent situation. Because

---

[7] *Schmerber, supra; Scales v. State*, 64 Wis.2d 485, 219 N.W.2d 286 (1974).

[8] *Schmerber, supra* note 6; *Driver, supra* note 4.

[9] *Schmerber, supra* note 6; *Driver, supra* note 4.

[10] *Driver, supra* note 4.

[11] *Driver, supra* note 4.

the evidence of the content of blood alcohol would rapidly deteriorate, the officers believed they did not have sufficient time to obtain a warrant from a magistrate. The drawing of the blood sample was reasonable. It was performed by a hospital technician in a hospital environment according to accepted medical practice.

There was probable cause, exigent circumstances, and a reasonable manner of taking the blood sample. Therefore, the results of the blood alcohol tests were admissible.[12]

*By the Court.*—Order reversed.

---

[12] To be admitted, this chemical test for intoxication is subject to expert testimony to establish its probative value. Section 885.235(3), Stats.