STATE of Wisconsin, Plaintiff-Respondent,

v.

Franklin J. NEITZEL, Defendant-Appellant.

Supreme Court

*No. 77–119. Submitted on briefs March 5, 1980.—*
*Decided April 1, 1980.*
(Also reported in 289 N.W.2d 828.)

For the appellant the cause was submitted on the briefs of *Hafner, McDonald, Thompson & Russell, S. C.,* of La Crosse.

For the respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Albert Harriman,* assistant attorney general.

HEFFERNAN, J. The county court directed the Administrator of the Motor Vehicle Division of the Department of Transportation to suspend Franklin J. Neitzel's driving privileges for a period of sixty days because of Neitzel's unreasonable refusal to submit to chemical testing as required by sec. 343.305, Stats. 1975.[1]

[1] "343.305 **Suspension of license on refusal to submit to chemical tests for intoxication.** (1) Any person who drives or operates a motor vehicle upon the public highways of this state, or in those areas enumerated in s. 346.61, shall be deemed to have given consent to a chemical test of his breath, blood or urine, for the purpose of determining the alcoholic content of his blood if arrested and issued a citation for driving or operating a motor vehicle while under the influence of an intoxicant in violation of s. 346.63 (1) (a) or a local ordinance which is in conformity therewith. . . .

"(2) (a) If a person is arrested and issued a citation for driving or operating a motor vehicle while under the influence of an intoxicant the arresting officer shall inform him:

"1. That he is deemed to have consented to a chemical test under sub. (1);

"2. That if he refuses to submit to the test he shall have his driving privilege suspended for a period of 60 days as provided in sub. (7);

"4. That in addition to the test designated by the law enforcement agency under sub. (1), he may have an additional test as provided in sub. (4).

"(b) If the person refuses the request of a traffic officer to submit to a chemical test, no test shall be given, but the traffic officer shall prepare a written report of the refusal and have it delivered within 5 days to a court of record in the county in which the person resides or in the county in which the arrest was made. He shall promptly deliver a copy to the person requested to take such test. The report shall contain the following information:

"1. That the person at the time he was requested to submit to a test was under arrest for driving or operating a motor vehicle while under the influence of an intoxicant;

"2. That the person refused to submit to a test;

On this appeal Neitzel asserts that he was entitled to consult counsel before deciding to take or refuse to take a chemical test for intoxication as provided by sec. 343.-305, *et seq.*

■

We conclude that for this purpose no right to counsel is afforded by Wisconsin law. By reason of the implied consent law, a driver, when he applies for and receives an operator's license, submits to the legislatively imposed condition on his license that, upon being arrested and issued a citation for driving under the influence of an intoxicant, contrary to sec. 346.63 (1), Stats., he consents to submit to the prescribed chemical tests. He applies for and takes his license subject to the condition that a failure to submit to the chemical tests will result in the sixty-day revocation of his license unless the refusal was reasonable.

Because the clear policy of the statute is to facilitate the identification of drunken drivers and their removal from the highways, the statute must be construed to further the legislative purpose. To confer the right to consult counsel before giving the accused a required

"3. That such person was informed of the consequences of his refusal to submit to the test; and

"4. That such person was informed of his rights under subs. (4) and (5)(a).

"5. That the refusal of the person to submit to a test was unreasonable.

". . .

"(7)(c) . . . Nothing in this subsection shall prohibit the person from introducing evidence on his own behalf to establish the reasonableness of his refusal to submit to a chemical test provided under s. 343.305(1). At the close of the hearing or within 10 days thereafter, the court shall determine whether or not the conditions of sub. (2)(b) have been complied with. If the conditions of sub. (2)(b) have been complied with, the court shall direct the administrator to suspend the operating privilege of such person for a period of 60 days. . . ."

chemical test, which was consented to by the application for a driver's license and under circumstances where no constitutional right is involved, would thwart the legislative purpose. The right to "consult and be advised by an attorney," as provided in sec. 946.75, Stats. 1975,[2] does not affect the state's authority to request an arrested driver to submit to chemical testing, and the refusal to submit to such test because there has been no prior opportunity to consult with, and be advised by, counsel is not for that reason reasonable and sufficient to excuse compliance with the implied consent law. We affirm.

The record shows that Neitzel was arrested by Deputy Sheriff Gerald Clark in La Crosse county at about 11:15 p.m. on the evening of May 9, 1977. After observing erratic driving, Deputy Clark stopped the vehicle and placed the driver, Neitzel, under arrest for operating a motor vehicle while intoxicated. A traffic citation was issued at the time of the arrest. Clark then took Neitzel to the La Crosse County Courthouse, where he informed him of his obligations under Wisconsin's implied consent law. Deputy Clark told Neitzel that, pursuant to that law, he was deemed to have consented to taking a chemical test to determine the percentage of alcohol in his blood. Reading from a standard state form, MVD–4197, Deputy Clark told Neitzel that, if he unreasonably refused to take the test, his driving privileges would be revoked for sixty days; that he could request a hearing to establish the reasonableness of his refusal; and that, if he did not wish to take a breathalyzer test, he could

---

[2] "946.75 **Denial of right of counsel.** Whoever shall, while holding another person in custody and if that person requests a named attorney, deny that other person his right to consult and be advised by an attorney at law at his own expense, whether or not such person is charged with a crime, may be fined not less than $100 nor more than $1,000 or imprisoned for not less than 10 days nor more than 6 months, or both."

choose one of two alternate types of tests and have the test performed by a physician of his own choice. Additionally, Deputy Clark told Neitzel that, if he was convicted of driving while under the influence of intoxicants after having unreasonably refused to submit to a chemical test, his operating privileges would be suspended for a period of one year.

Neitzel was not given a *Miranda* warning, nor was any such warning required, because there was no interrogation. Although the standard implied consent warning, which was read to Neitzel, does not refer to any right to counsel before deciding to take a chemical test, after the warning was read, Neitzel asked permission to telephone his own attorney. Deputy Clark testified that, although it was contrary to the department's normal procedure to allow a driver to contact an attorney before deciding to take a chemical test, Neitzel was nevertheless permitted to call his own attorney. Neitzel asked his attorney to come to the courthouse to assist him in deciding whether to take the intoxication test. The record indicates that Neitzel's phone conversation with his attorney was extremely brief and included no discussion of whether Neitzel should submit to the test.

After Neitzel finished speaking with his attorney, the police demanded that he make a decision whether or not he would take the breathalyzer test. Neitzel replied that he would not take the test until his attorney arrived. Clark explained that the test must be administered within a limited time following the arrest,[3] and that he must

---

[3] "885.235 **Chemical tests for intoxication.** (1) In any action or proceeding in which it is material to prove that a person was under the influence of an intoxicant when operating or driving a motor vehicle, or while handling a firearm, evidence of the amount of alcohol in such person's blood at the time in question as shown by chemical analysis of a sample of his breath, blood or urine is admissible on the issue of whether he was under the influence of an intoxicant if such sample was taken within 2 hours after the event to be proved. . . ."

make the decision promptly regardless of whether his lawyer was present. Clark explained to Neitzel that his insistence on waiting for his lawyer would be construed as a refusal to take the test. The implied consent law was explained to Neitzel several more times, but he repeatedly refused to take the test until his lawyer was present. Neitzel acknowledged that he never told the officers when he expected his attorney to arrive. Officer Clark recorded Neitzel's refusal at 12:20 a.m. on May 10 and booked him into the county jail.

Shortly after Neitzel was booked, his attorney arrived, posted bond, and at 1:00 a.m., approximately one hour and forty-five minutes after the arrest, Neitzel was released from custody. Neither Neitzel nor his attorney requested that the chemical test be administered, and the police did not ask Neitzel to submit to the test after the arrival of the attorney.

On the same day, the arresting officer reported to the county court of La Crosse county that Neitzel had unreasonably refused to submit to a chemical test required by the implied consent law. He asked that the court suspend Neitzel's license for sixty days, as is required by law. The court notified Neitzel of this request and of his right to a hearing prior to the suspension of the license.[4] Neitzel requested a hearing, and one was held

---

[4] "343.305 . . . (7)(c)  If the reported person requests a hearing within the 60 days, the court shall set a time and place for the hearing, with notice to the person. Requests for hearing as herein provided shall go to the head of the docket wherein filed. The hearing shall be transcribed and shall be limited to the issues stated in sub. (2)(b). Nothing in this subsection shall prohibit the person from introducing evidence on his own behalf to establish the reasonableness of his refusal to submit to a chemical test provided under s. 343.305(1). At the close of the hearing or within 10 days thereafter, the court shall determine whether or not the conditions of sub. (2)(b) have been complied with. If the conditions of sub. (2)(b) have been complied with, the court shall direct the administrator to suspend the operating privilege of

before Judge Michael Kirchman on July 20, 1977. The facts adduced are those summarized above.

After the hearing, at which Neitzel was represented by counsel, the court found that the defendant did not have the right to consult with an attorney, that the state had the right to gather evidence with or without an attorney being present, and that the defendant's refusal to submit to a chemical test was unreasonable. The court also made the finding that the arresting officers complied with the implied consent law by giving the appropriate warnings prior to demanding a chemical test. The order for suspension was directed by the court to be effective on July 25, 1977, with the further proviso that actual suspension would be stayed in the event an appeal was taken. A notice of appeal was filed immediately; and, accordingly, the suspension of Neitzel's driver's license for refusal to take the required chemical test has been stayed during the pendency of this appeal.

On this appeal, Neitzel asks the court to rule that a person arrested for driving under the influence of an intoxicant has a "limited" right to confer with an attorney before responding to a request for chemical testing. Neitzel refers to this alleged right as a limited one, in that he acknowledges that the right to counsel should be allowed only where invoking the right would not unduly burden the police or significantly delay chemical testing.

Neitzel's brief implicitly acknowledges the fact that the request for an attorney cannot be used to vitiate the purposes of the implied consent law. He acknowledges that, if the accused cannot contact his counsel promptly,

such person for a period of 60 days. If the conditions of sub. (2) have not been complied with, the court shall order that the report be dismissed and that no action be taken on the driving privilege. Nothing in this subsection shall preclude the prosecution for violation of s. 346.63(1)(a) or a local ordinance which is in conformity therewith."

he can be required to make a decision whether to submit to chemical testing in the absence of counsel.

For his position, Neitzel relies principally upon the case of *Prideaux v. State Department of Public Safety,* 310 Minn. 405, 247 N.W.2d 385 (1976). Neitzel acknowledges that the decision of the Minnesota Supreme Court granting the limited right to counsel rests not on a constitutional right but on the theory that the accused has a statutory right to counsel under Minnesota law before deciding whether to submit to chemical testing.

This court has repeatedly held that an arrested driver does not have a constitutional right to consult with an attorney prior to deciding whether to submit to chemical testing under the implied consent law. *State v. Bunders,* 68 Wis.2d 129, 227 N.W.2d 727 (1975) ; *State v. Driver,* 59 Wis.2d 35, 207 N.W.2d 850 (1973). These cases rest upon the rationale enunciated in the United States Supreme Court case of *Schmerber v. California,* 384 U.S. 757 (1966), and *State v. Kroening,* 274 Wis. 266, 79 N.W.2d 810, 80 N.W.2d 816 (1956), both of which held that the constitutional privilege against self-incrimination is not violated by compelling the accused to lend his person as a source of nontestimonial evidence.

In *Driver,* we said:

"Since the privilege [against self-incrimination] was not involved in defendant's choice to submit to the test, there is no merit to his argument that counsel was necessary in order to advise him in making that choice." (at 42-3)

In *Bunders,* we specifically held that no constitutional right was violated where an arresting officer refused to grant an accused access to counsel before being asked to take the intoxication test.

Neitzel acknowledges that *Driver* and *Bunders* are in accord with the vast majority of jurisdictions whose courts have considered whether there is a constitutional

right to counsel prior to taking chemical tests under implied consent laws. Although it is clear that Neitzel would prefer to have this court reconsider the question of constitutional right to counsel in this situation, the thrust of his argument is based upon a limited right to counsel pursuant to statute.

The Wisconsin statute upon which Neitzel would rest his claim is sec. 946.75, Stats.,[5] which provided:

> **"Denial of right of counsel.** Whoever shall, while holding another person in custody and if that person requests a named attorney, deny that other person his right to consult and be advised by an attorney at law at his own expense, whether or not such person is charged with a crime, may be fined not less than $100 nor more than $1,000 or imprisoned for not less than 10 days nor more than 6 months, or both."

On the basis of this statute, Neitzel urges that this court should follow the lead of the Minnesota Supreme Court in concluding that the accused has a statutory right to counsel before deciding whether to submit to chemical testing.

We agree that the Minnesota implied consent statutes are similar to those of Wisconsin; and the Minnesota right to counsel statute, St. 481.10, is similar to sec. 946.75, Stats. Minn. St. 481.10 provides:

> "All officers or persons having in their custody a person restrained of his liberty upon any charge or cause alleged, except in cases where imminent danger of escape exists, shall admit any resident attorney retained by or in behalf of the person restrained, or whom he may desire to consult, to a private interview at the place of custody. Such custodians, upon request of the person restrained, as soon as practicable, and before other proceedings shall be had, shall notify any attorney residing in the county of the request for a consultation with him. Every officer or person who shall violate any provision

---

[5] Ch. 173, sec. 153, Laws of 1977, effective June 1, 1978, changed the penalty language but not the substance of sec. 946.75.

of this section shall be guilty of a misdemeanor and, in addition to the punishment prescribed therefor shall forfeit $100 to the person aggrieved, to be recovered in a civil action." *Prideaux, supra* at 415.

Because an accused drunken driver must be arrested before he is asked to submit to chemical testing, it is clear that he is in "custody" as that term is used in sec. 946.75, Stats. It does not follow, however, that a requested consultation with counsel can be permitted to delay the accused driver's decision to take or refuse the required chemical test. The obligations of a driver under the implied consent law are entirely independent and unrelated to the general statutory right to counsel. Evidence of this is supplied by the fact that the right to counsel statute was enacted prior to the enactment of the implied consent law, but the implied consent law makes no mention of the right to counsel prior to chemical testing. Accordingly, under well established rules of statutory construction, the more recent and more specific implied consent law, which does not provide for counsel, is controlling on the issue of right to counsel in the specific situation dealt with therein. *See, State v. Graf,* 72 Wis.2d 179, 181, 240 N.W.2d 387 (1976); *Schlosser v. Allis-Chalmers Corp.,* 65 Wis.2d 153, 161, 222 N.W.2d 156 (1974).

Sec. 946.75, Stats., was in effect at the time this court decided *Driver* and *Bunders.* Those cases specifically held that there was no constitutional right to counsel and, by implication, rejected any basis for counsel in the implied consent situation. Had the legislature concluded that the court erred in failing to find there was a right to counsel before chemical tests were administered, the legislature was free to correct that interpretation. It has not done so. Accordingly, it is reasonable to conclude, under well established rules of construction, that this

court correctly interpreted the legislative intent when it denied all right to counsel in *Driver* and *Bunders*. *See, Lampada v. State Sand & Gravel Co.,* 58 Wis.2d 315, 320, 206 N.W.2d 138 (1973). Moreover, the state points out correctly that the accused intoxicated driver has no choice in respect to granting his consent. He has, by his application for a license, waived whatever right he may otherwise have had to refuse to submit to chemical testing. It is assumed that, at the time a driver made application for his license, he was fully cognizant of his rights and was deemed to know that, in the event he was later arrested for drunken driving, he had consented, by his operator's application, to chemical testing under the circumstances envisaged by the statute.

The only option given to the arrested driver was to undergo a sixty-day suspension of his operator's privileges if he were to recant the consent he had previously given. Because a lawyer cannot induce his client to recant a consent previously given knowingly and voluntarily, we see no purpose consistent with the implied consent law that a lawyer can serve by advising a client prior to the time the law requires an arrested driver either to submit to a chemical test or to refuse it.

Nevertheless, it should be noted that the statute as it existed in 1975 (sec. 343.305(2)(b)5) provided that the arresting officer at the time a report was to be made to the court was to include the statement, "[t]hat the refusal of the person to submit to a test was unreasonable."

Also, in the statutory provisions for a court hearing on the sixty-day suspension, the person whose license is sought to be suspended has the right to introduce "evidence on his own behalf to establish the reasonableness of his refusal to submit to a chemical test provided under s. 343.305(11)." The 1975 statute is silent in respect to what circumstances make a refusal to submit reasonable.

Nothing in the statute would lead to a conclusion that a refusal based upon the inability to secure the prior advice of counsel is, for that fact alone, a reasonable refusal.

The implied consent statutes were amended by ch. 193, Laws of 1977. Under the 1977 law, which now appears in the statutes as sec. 343.305(8)(b)2, appears the provision that:

"The person shall not be deemed to have refused if it is shown by a preponderance of the evidence that the refusal was due to a physical inability to submit to the test due to a physical disability or disease unrelated to the use of intoxicants or controlled substances."

While the exoneration for this reason does not appear in the 1975 statutes applicable to the instant case, it is apparent that only the type of situation spelled out in the 1977 session laws could exonerate a refusal to take the tests. Had the legislature considered the absence of counsel a reason for exoneration, it would have spelled that out in the original implied consent law or in the 1977 statutes, which furnished further legislative gloss on circumstances which did not require the suspension of a license for refusal to take the test.

We conclude that the statutory ground for refusal, "physical inability," which was specifically stated in the 1977 statutes, was the only reasonable ground for exonerating a refusal under the statutes as they appeared in 1975. We deem the 1977 revision merely to be an interpretation of the 1975 statutes and not to be a change in meaning. There is no indication that the legislature, while it was considering the 1977 revision, wished to engraft any new reason for exoneration, such as the inability to obtain counsel, upon the implied consent law.

Neitzel argues, however, that a limited right to counsel, particularly in the context of the rules of evidence in this state, is fully consistent with the implied consent

law. He points out that under sec. 885.235(1), Stats., the results of chemical tests administered within two hours of the time of arrest are admissible in subsequent court proceedings. Thus, Neitzel argues there is a convenient two-hour time period during which the accused could be afforded the right to counsel without hampering the purposes underlying the implied consent law.

We cannot deny that this is a rational argument; and it is one which the legislature could accept if it wished to, but we cannot. The entire tenor of the implied consent law is, however, to the contrary—that consent has already been given and cannot be withdrawn without the imposition of the legislatively imposed sanction of mandatory suspension.

It should be noted, moreover, that the chemical tests specified under the implied consent law are entitled to a prima facie presumption of accuracy. *Suspension of Operating Privilege of Bardwell,* 83 Wis.2d 891, 900, 266 N.W.2d 618 (1978). The procedure for administering chemical tests for intoxication is distinguishable from various pretrial procedures, like live line-ups, where counsel may be necessary to serve as the eyes and ears of the accused, so the reliability of evidence gathered at the procedure can be tested at trial. *Wright v. State,* 46 Wis.2d 75, 84, 175 N.W.2d 646 (1970). There is no reason why counsel's presence is necessary to assure the scientific accuracy of the test. Because the chemical testing procedure under the implied consent law is mechanical in nature and entitled to a presumption of accuracy, the results can be fairly questioned at trial, irrespective of whether counsel was present at the test.

The purpose behind the implied consent law is to facilitate the gathering of evidence against drunk drivers. *Scales v. State,* 64 Wis.2d 485, 219 N.W.2d 286 (1974). We stated in *Scales* that the implied consent law was to facilitate the taking of tests for intoxication and not to inhibit the ability of the state to remove

drunken drivers from the highway. The proper and liberal construction of legislation designed for this very purpose militates against the court's granting the accused a limited right to counsel, because that right, to some degree at least, would impede the police in obtaining evidence against those drivers who are under the influence of intoxicants. Under these circumstances it was for the legislature, not the court, to balance the purpose of the statute against a possible statutory right to counsel prior to testing.

Nevertheless, a person who is arrested and subject to an intoxication test under the implied consent law has the right to counsel under sec. 946.75, Stats., because he is in custody; but that right does not extend to prior counselling on the question of whether a person in custody should give his consent to testing or refuse to submit to testing. The Sheriff's Department of La Crosse County appropriately, and in a manner consistent with sec. 946.75, permitted Neitzel to call his own counsel because Neitzel was in custody. To have refused could have resulted in the prosecution of the custodial officer for imposition of the penalties provided by sec. 946.75.

When Neitzel's counsel arrived at the jail, he did exactly what he appropriately could do under the circumstances. He did not advise Neitzel whether or not to take the intoxication test. Instead, he determined the amount of bail and arranged for his client's prompt release. Had Neitzel been threatened with, or warned of the possibility of, custodial interrogation, he, of course, would have had the rights conferred by *Miranda v. Arizona*, 384 U.S. 436 (1966), and counsel could give appropriate advice on that question.

Where a person is arrested and issued a citation because there was probable cause to believe he was driving under the influence of intoxicants, the custodial authorities have the duty under the implied consent statute to

immediately warn him of his obligations under the statute and the possible consequences of his refusal to take the chemical tests. Once there has been a proper explanation and there has been a refusal, even though that refusal is conditioned on the accused's willingness to reconsider after conferring with counsel, a refusal has occurred under the statute and the accused is subject to the consequence of a mandatory suspension. There is no obligation upon the law enforcement authorities to renew the offer to take the test, even though the time within which the test may be admissible—the two-hour period after the arrest—has not yet expired. The obligation of the accused is to take the test promptly or to refuse it promptly. If he refuses, the consequences flow from the implied consent statute. There is no right to counsel, constitutional or statutory, for the purpose of assisting an accused drunken driver in determining whether or not he will proceed with his obligations under the implied consent law.

Additionally, Neitzel argues that the stage was not set for the demand to take the chemical test because no citation was issued prior to being asked. Neitzel's argument is based upon sec. 343.305(2)(a), Stats., which provides in part that, "[i]f a person is arrested and issued a citation for driving or operating a motor vehicle while under the influence of an intoxicant the arresting officer shall inform him" of his rights under the implied consent law.

While sec. 343.305(2)(b)1, Stats., casts some doubt on there being a requirement that a driver must be issued a citation before being asked to take the test, the point is irrelevant in the context of the instant case, because three times during the course of the hearing the arresting officer testified that he issued a citation to Neitzel when he stopped and arrested him on the highway.

Moreover, Neitzel also claims that his refusal to submit to the test should not be held against him, because

the police confused him in regard to his rights when they permitted him to call his attorney before he unequivocally refused to take the test. The record is to the contrary. It is replete with evidence that the implied consent law, before and after the call to the attorney, was repeatedly explained to Neitzel in the clear and unequivocal language set forth in the MVD form entitled, "Informing the Accused." Neitzel expressly admitted that the police never told him that he had the right to consult his attorney before deciding whether he would take the test. In fact, the record demonstrates to the contrary—that the police carefully explained to Neitzel that his insistence on waiting for his attorney would be interpreted as an unreasonable refusal to take the chemical tests that he had agreed to take when he applied for his license. The contention that Neitzel was confused about his rights is contrary to the record and is further undercut by his admission that he had previously been convicted of drunken driving and had been subject to the implied consent testing procedure at that earlier time.

We conclude that a driver arrested under the provisions of sec. 346.63 (1) (a), Stats., has no right to counsel before deciding whether to submit to chemical testing for intoxication under the implied consent law.

*By the Court.*—Order affirmed.