TIM A. DUKET, District Attorney Marinette County
You have requested my opinion on several questions regarding the implied consent law and its relationship to certain other statutory and constitutional provisions.
Your first question relates to the circumstances that would require a law enforcement officer to obtain a search warrant, in spite of the existence of the implied consent statute, prior to taking a blood sample. Specifically, you ask how to reconcile the implied consent statute with State v. Bentley, 92 Wis.2d 860,286 N.W.2d 153 (Ct.App. 1979). That case discusses the requirements under the United States and Wisconsin Constitutions that a search warrant be obtained, or that certain standards justifying a warrantless search be met, before taking a blood sample. Id. at 864.
The implied consent statute permits the taking of blood, breath and urine samples, without a warrant or other legal basis separate from the statute itself, upon arrest of a person for violation of section 346.63 (1). Stats., or a local ordinance in conformity therewith, or for violation of section 346.63 (2). section 940.25 or section 940.09 where the offense involved the use of a vehicle. Sec. 343.305 (2), Stats. The statute provides authority to administer a chemical test only if the arrested person has not withdrawn his implied consent by refusing to submit to the test. Sec. 343.305 (3)(b), Stats. The statute provides certain penalties for the refusal to submit to a test. Sec. 343.305 (3)(b), (8) and (9), Stats.
State v. Bentley was not controlled by the implied consent law. Bentley was charged with violating sections 940.09 and 940.25. At the time the case was decided, subsection (2) of the implied consent statute had not yet been amended to cover violations of sections *Page 124 346.63 (2), 940.09 and 940.25. See ch. 20, sec. 1568 (f), Laws of 1981. See also 62 Op. Att'y Gen. 174 (1973). Therefore, the implied consent law was inapplicable. Even if the charged violations had been included in the implied consent law, the fact that Bentley had not yet been arrested when the blood sample was taken, 92 Wis.2d at 863, and that he had refused permission to take the sample, 92 Wis.2d at 862, meant that the implied consent law would not have provided justification for administering the blood test. The Bentley case was a constitutional challenge to the admissibility of blood test evidence. Accordingly, the Wisconsin Supreme Court looked to state and federal constitutional standards to appraise the evidence's admissibility.
In circumstances where the implied consent law does not furnish legal authority for drawing blood, the taking of a blood sample is only permissible if it can be justified on some other basis independent of the implied consent law. One such basis would be actual consent. See, e.g., State v. Fillyaw, 104 Wis.2d 700,312 N.W.2d 795 (1981), cert. denied, 455 U.S. 1026 (1982). Another would be a valid warrant. See State v. Bentley,92 Wis.2d at 864; Schmerber v. California, 384 U.S. 757, 770 (1966).
In the absence of justification under the implied consent law, actual consent or a warrant, a blood sample may nevertheless be taken if there exists probable cause for arrest and search, exigent circumstances and a reasonable method and manner of drawing the blood. State v. Bentley, 92 Wis.2d at 864; Schmerberv. California, 384 U.S. at 768-72. In addition, there must be a "clear indication" that desired evidence in fact will be found.Schmerber v. California, 384 U.S. at 770.
As the above discussion indicates, the procedures relating to chemical testing which are specified in the implied consent law do not preempt general constitutional search and seizure principles. If a person refuses to submit to a blood sample within the meaning of section 343.305 (3)(b). he or she may be subject to the penalties specified for such refusal in the implied consent law. Sec. 343.305 (3)(b). (8) and (9), Stats. At the same time, if constitutional justification to draw that person's blood exists independently of the implied consent law. then the blood may be drawn despite the person's refusal, and it is my opinion that evidence of such a blood test would be admissible in subsequent criminal proceedings. *Page 125 
There are several reasons for my conclusion that, where independent legal justification exists, blood may be drawn despite a person's revocation of his implied consent. By its terms, section 343.305 is not exclusive. The statute was amended to eliminate language in subsection (2)(b) of the original statute which stated, "If the person refuses the request of a traffic officer to submit to a chemical test, no test shall be given . . ." Ch. 193, sec. 7, Laws of 1977. Compare 62 Op. Att'y Gen. 174 (1973). The statute was further amended to add the current subsection (2)(d), stating, "This section does not limit the right of a law enforcement officer to obtain evidence by any other lawful means." Ch. 20, sec. 1568gm, Laws of 1981. The implied consent law does not alter independent legal standards authorizing the taking of blood samples under constitutionally permitted circumstances. Scales v. State, 64 Wis.2d 485, 494,219 N.W.2d 286 (1974). On the contrary, the legislative intent underlying the statute was to facilitate the taking of tests for intoxication and the prosecution of drunk drivers, and the courts have repeatedly stated that the statute must be liberally construed to further those policies. See, e.g., Ch. 20, sec. 2051 (13), Laws of 1981; State v. Neitzel, 95 Wis.2d 191, 193, 203-04,289 N.W.2d 828 (1980); Scales v. State, 64 Wis.2d at 494. Thus, I conclude that the implied consent law is not violated when on the basis of other legal authority, blood is drawn from a person who has refused to submit to the test within the meaning of section 343.305 (3)(b).
Your second question relates to whether the exigent circumstances component of the constitutional standard for permitting a warrantless blood test is ever absent in a situation involving an intoxicated driver. Specifically, you ask whether exigent circumstances would be present if an accident occurred outside a courthouse at 10:00 a.m. and the district attorney and judge were available to provide a search warrant.
As noted above, this question need only arise if the implied consent law does not furnish authority to take the blood sample, and if the person from whom a sample is sought has not given actual consent.
My opinion is that drunk driving situations will usually, but not always, present exigent circumstances. Blood rapidly metabolizes alcohol, leading to deterioration and eventual disappearance of the evidence of intoxication. State v. Bentley,92 Wis.2d at 864; Schmerber v. California, 384 U.S. at 770. However, exigent circumstances *Page 126 
are not present unless, in view of this biological phenomenon, the law enforcement officer reasonably believes that under the circumstances there is inadequate time to obtain a warrant. Statev. Bentley, 92 Wis.2d at 865; Schmerber v. California,384 U.S. at 770-71. Your hypothetical example implies that a law enforcement officer has appeared at the scene immediately after an accident and could obtain a warrant immediately thereafter. On its face, this example suggests that the law enforcement officer probably could not reasonably believe that there was insufficient time to obtain a warrant before the evidence would deteriorate or disappear. However, a definitive determination of whether exigent circumstances exist depends upon the specific facts of each case. In the absence of information about the totality of the circumstances (including, for example, whether there were other demands on the officer — such as administering first aid — which prevented obtaining a warrant), a firm conclusion as to whether exigent circumstances exist is not possible.
It should be noted that, wherever possible, a search warrant should be obtained in order to avoid potential obstacles to future prosecution. Although there are legal exceptions to the general rule requiring search warrants, the law unquestionably looks more favorably on compliance with the general rule. Even in cases where the absence of a warrant is ultimately found to be legally justified, a significant expenditure of prosecutorial resources is often required in order to obtain that finding. Thus, complying with warrant procedures, where possible, is both legally preferable and practically advantageous.
Your third question relates to the circumstances that would permit a law enforcement officer to use physical restraint in order to obtain a blood sample. Specifically, you ask whether the severity of the offense or possession of a search warrant would justify overcoming a person's physical resistance in order to perform a blood test.
As has already been discussed, the implied consent law does not furnish permission to draw blood from a person who has withdrawn his implied consent. Sec. 343.305 (3)(b), Stats. Therefore, where a person's physical resistance indicates or is accompanied by his withdrawal of implied consent, the statute does not furnish permission to exert physical force to draw blood from such a person. 68 Op. Att'y Gen. 209 (1979). However, if a person is unconscious *Page 127 
or otherwise not capable of withdrawing consent, the statute provides that the person is presumed not to have withdrawn consent. Sec. 343.305 (2)(c), Stats. In such cases, physical force may be used to draw the blood, subject to the constitutional limitations discussed below.
In addition, as has already been noted, other legal bases which permit obtaining a blood sample include a valid search warrant, or the presence of probable cause, exigent circumstances, a reasonable method and manner of drawing the blood and a clear indication that the desired evidence will be found. State v.Bentley, 92 Wis.2d 860; Schmerber v. California, 384 U.S. 757. These legal bases would permit restraining a person in order to draw blood, subject to the following constitutional limitations.
Any attempt to use physical restraint in order to take a blood sample is subject to constitutional limits on reasonable searches and seizures. See Schmerber v. California, 384 U.S. at 768. The leading case of Schmerber v. California suggested, without deciding, that administering a blood test by other than medical personnel or in other than a medical environment, or failure to respect a person's preference for a different type of chemical test on grounds of fear, concern for health or religious scruple, would fail to meet the reasonableness requirement of thefourth amendment of the United States Constitution. Schmerber v.California, 384 U.S. at 771-72. The United States Supreme Court has not defined the amount or type of force which would be unreasonable in administering a blood test. One commentator has stated. "The test is not rendered unreasonable in its performance merely because that amount of force needed to overcome the arrestee's resistance is used." 2 La Fave, Search and Seizure
§ 5.3 (c) at 325 n. 97 (1978). However, there would clearly be circumstances in which the amount or type of force used could be found to be unreasonable and thus violative of thefourth amendment.
The fourth amendment of the United States Constitution requires that any intrusion beneath the skin, in order to be reasonable, must be justified under a balancing test that weighs the individual's interests in privacy and security against society's interest in conducting the procedure. Winston v. Lee, 53 U.S.L.W. 4367 (March 20, 1985). Factors to be considered when evaluating society's interest under this test include the existence of other adequate evidence and the severity of the underlying offense.Winston v. Lee; *Page 128 Welsh v. Wisconsin, 104 S.Ct. 2091 (1984). Factors to be considered when evaluating the individual's interests in privacy and security include the degree of threat to health or safety.Winston v. Lee. I believe that attempting to draw blood by force from a person whose refusal "was due to a physical inability to submit to the test due to a physical disability or disease unrelated to the use of alcohol, controlled substances or other drugs," see section 343.305 (3)(b)5.d., would be unreasonable.
In addition to search and seizure considerations, the use of force in order to extract a blood sample must comply with the due process clause of the fourteenth amendment of the United States Constitution. In Rochin v. California, the United States Supreme Court found that a course of events consisting of illegally breaking into a man's home, struggling to open his mouth and remove what was there, and having his stomach's contents forcibly extracted by use of a "stomach pump" against his will in order to obtain evidence of narcotics, "shock[ed] the conscience" of the Court and violated due process of law. Rochin v. California,342 U.S. 165, 172 (1952). Subsequently, the United States Supreme Court found that the due process clause was not violated in two blood-test cases on the ground that a simple, medically-administered blood test is routine and not brutal, offensive or shocking. Schmerber v. California, 384 U.S. at 759-60; Breithauptv. Abram, 352 U.S. 432, 435-37 (1957). The Court specifically suggested that a person's resort to physical violence to resist a blood test would not in itself render an ensuing test violative of the due process clause. Schmerber v. California, 384 U.S. at 760
n. 4. However, the Court stated, "It would be a different case if the police initiated the violence, refused to respect a reasonable request to undergo a different form of testing, or responded to resistance with inappropriate force." Schmerber v.California, 384 U.S. at 760 n. 4. See also South Dakota v.Neville, 459 U.S. 553, 559 n. 9 (1983).
As is true of unreasonable force under the fourth amendment, the dimensions of "inappropriate force" under the due process clause have not been defined by the United States Supreme Court. I believe that the use of force to draw blood from a person whose refusal "was due to a physical disability or disease unrelated to the use of alcohol, controlled substances or other drugs," see
section 343.305 (3)(b)5.d., would violate thefourteenth amendment as well as the fourth amendment. *Page 129 
Your fourth question is whether hospital personnel would be required to comply with a law enforcement officer's request to take a blood sample from a person whom the officer has legally subdued by force for purposes of submitting to a blood sample, where the officer has completely restrained the person and has immobilized the person's arm.
In a prior opinion, I stated that hospitals, physicians, nurses and other health professionals would be criminally liable under section 946.40 for refusing to aid an officer, if they refused to comply with an officer's request to draw a blood sample from a person who has not withdrawn his implied consent or who is unconscious or otherwise incapable of withdrawing consent. 68 Op. Att'y Gen. 209 (1979). The mere fact that a police officer has physically restrained the person does not alter that analysis. It should be noted, however, that section 946.40 imposes criminal liability only if the refusal or failure to assist an officer is without "reasonable excuse," and only if the officer's command is legally authorized. It is my opinion that one such "reasonable excuse" for a health professional's refusal to comply with an officer's request to draw blood would be the absence of clear legal justification for the officer's request, such as the absence of authorization under the implied consent statute, a warrant or express consent. Another example of a good reason would be a medical basis for the refusal to draw the blood. Indeed, as noted above, a health professional's refusal to comply on medical grounds may, itself, indicate that the officer's request is not legally authorized, since both the fourth andfourteenth amendments forbid involuntary blood tests under certain medically unsound conditions.
BCL:SFG