**COURT OF APPEALS
DECISION
DATED AND FILED**

**December 9, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP888**

**STATE OF WISCONSIN**

Cir. Ct. No. **2019TR4106**

**IN COURT OF APPEALS
DISTRICT II**

IN THE MATTER OF THE REFUSAL OF JAMES MICHAEL CONIGLIARO:

WASHINGTON COUNTY,

　　PLAINTIFF-RESPONDENT,

　V.

JAMES MICHAEL CONIGLIARO,

　　DEFENDANT-APPELLANT.

APPEAL from an order of the circuit court for Washington County: SANDRA JO GIERNOTH, Judge. *Affirmed.*

¶1 REILLY, P.J.[1] James Michael Conigliaro appeals from an order finding he unlawfully refused to submit to an evidentiary chemical test.[2] Conigliaro argues that the arresting officer led him to believe that he had the right to consult with an attorney before deciding whether to submit to an evidentiary chemical test and that the officer also "failed to dispel" his belief that he had the right to counsel. We affirm as the officer adhered to the statutory Informing the Accused form and did not inform or suggest that Conigliaro had the right to counsel *before* deciding whether to submit to testing.

*Facts*

¶2 Deputy Joseph Lagash of the Washington County Sheriff's Office was dispatched on November 30, 2019, to a report[3] of a Ford minivan operating in the area of Highway Q and Colgate Road at speeds between five and twenty miles per hour (mph)—in a thirty-five to forty-five mph area—and was "unable to maintain its lane." While en route, Lagash was informed that the minivan had struck a culvert. When Lagash arrived at the location, the minivan was stopped and the passenger was inspecting the rear tire. The driver, Conigliaro, was "slumped over" in the driver's seat with the vehicle running. The passenger told Lagash that Conigliaro was "just tired." Lagash and the passenger tried to wake Conigliaro by loudly calling his name and shaking him. Conigliaro did not wake,

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(c) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[2] WIS. STAT. § 343.305(9)(a).

[3] The report came from a "citizen witness" who "followed [Conigliaro's] vehicle until it was located" by Lagash, "remained on scene," and provided a statement.

became "very pale," and started "agonal breathing,"[4] which Lagash recognized as a sign of "opiate overdose." Lagash checked Conigliaro's pulse, which was faint, and performed a sternum rub on Conigliaro to no effect.

¶3 Lagash administered Narcan to Conigliaro, which made his pulse "a little stronger" although Conigliaro remained unresponsive. Shortly thereafter, Lagash could not find a pulse, so he removed Conigliaro from the vehicle, laid him on the ground, and administered a second dose of Narcan. A pulse returned, but Conigliaro remained unresponsive. A third dose of Narcan was being prepared when Conigliaro gained consciousness. Lagash observed Conigliaro's pupils to be constricted—another sign of "opiate use." Lagash also testified that, in his experience, Narcan does not work on "symptoms other than an opiate overdose." Rescue personnel arrived and took care of Conigliaro.

¶4 After Conigliaro was stabilized in the ambulance, Lagash twice requested that Conigliaro submit to alternate standardized field sobriety tests;[5] Conigliaro refused both requests. Lagash then advised Conigliaro that he was under arrest.

¶5 Lagash read Conigliaro the Informing the Accused form "exactly how [it was] written" and so indicated on the form after each paragraph.[6] Lagash

---

[4] Lagash testified that agonal breathing "makes like a snoring sound" and is "a body reflex" where the body is "[b]asically attempting to keep … breathing to get air."

[5] Lagash testified that he would have had to do "alternate tests" given Conigliaro's condition, explaining that performing standardized tests would have been unsafe as they involved standing and walking on the roadway.

[6] At the hearing, Lagash referenced Exhibit 1, which was a copy of the Informing the Accused form he utilized with Conigliaro. Lagash testified that he "make[s] the marking on the border" next to each paragraph on the form "after I receive the acknowledgment that [the individual] understood." Exhibit 1 does not appear in the record on appeal.

then asked Conigliaro, "Will you submit to an evidentiary chemical test of your blood?" Conigliaro responded by "asking … if he should have an attorney." Lagash told Conigliaro that he could not give him legal advice and he needed a yes or no answer to the question. Lagash again asked Conigliaro if he would submit to an evidentiary chemical test. Conigliaro responded by saying that he needed to consult with an attorney. Lagash testified, "I explained to him that *when this was all done*, if he wished to consult with an attorney, that was his choice. However, I still needed the yes or no question to this—or yes or no answer to this question." (Emphasis added.) Conigliaro answered, "No," saying he believed he needed to consult with an attorney. Lagash marked the form as a "refusal."

¶6 Conigliaro testified that he refused Lagash's first request to take the test, as "I believe I was—I had the right to an attorney so I said I want to talk to my attorney." Conigliaro claimed that Lagash did not tell him that he would have to make the decision about chemical testing before he spoke to an attorney. Conigliaro admitted that when Lagash started reading "his report" that "everything was a blur" and that he was "not all there." Conigliaro also admitted that he refused because he thought he was going to have to get out of the ambulance: "I did not want to get up and walk."

¶7 Conigliaro was charged with operating a motor vehicle while under the influence of an intoxicant, in violation of WIS. STAT. § 346.63(1)(a), and refusing to submit to a chemical test, in violation of WIS. STAT. § 343.305(9). Conigliaro requested a refusal hearing, arguing that he was led to believe that he had the right to counsel and Lagash failed to dispel that belief. The circuit court rejected Conigliaro's argument and ordered his operating privileges revoked for nine months. Conigliaro appeals.

*Standard of Review*

¶8    The County has the initial burden of showing that Lagash "used those methods which would reasonably convey the implied consent warnings." *See State v. Piddington*, 2001 WI 24, ¶22 n.11, 241 Wis. 2d 754, 623 N.W.2d 528. If the County meets its burden, then the burden shifts to Conigliaro to show that Lagash misstated the warnings or otherwise misinformed him and that Lagash's misconduct impacted his choice. *See id.* On appeal, we review de novo the circuit court's decision that a refusal to take a chemical test was improper. *State v. Ludwigson*, 212 Wis. 2d 871, 875, 569 N.W.2d 762 (Ct. App. 1997). We will uphold the court's findings of fact unless clearly erroneous. *State v. Eckert*, 203 Wis. 2d 497, 507, 553 N.W.2d 539 (Ct. App. 1996).

*Analysis*

¶9    Wisconsin's implied consent law, WIS. STAT. § 343.305, provides that an officer may request a chemical test of a person's blood, breath, or urine after the person is arrested for violating an OWI-related statute. Sec. 343.305(3)(a). Prior to requesting a sample, the officer is required to read the person certain information set forth in § 343.305(4), referred to as the Informing the Accused form.

¶10    Wisconsin's implied consent law makes no provision for a right to counsel. *See* WIS. STAT. § 343.305; *State v. Neitzel*, 95 Wis. 2d 191, 205, 289 N.W.2d 828 (1980). The law also does not include an affirmative duty to inform the accused that there is no right to counsel. *State v. Reitter*, 227 Wis. 2d 213, 242-43, 595 N.W.2d 646 (1999). An officer's only duty under the implied consent law is to administer the information contained in the Informing the Accused form. *Id.* at 230. The implied consent law is neither confusing nor contradictory, and we

do not recognize "subjective confusion" as to the provisions of the Informing the Accused form as a defense. *Id.* at 229. Therefore, we have previously explained that "wanting to first consult with counsel before deciding whether to submit to a [chemical] test is not a valid reason to refuse and an officer is on solid grounds in marking a refusal if the custodial defendant relies on this explanation for not immediately agreeing to take the [chemical] test." *State v. Verkler*, 2003 WI App 37, ¶8, 260 Wis. 2d 391, 659 N.W.2d 137. This court has, however, recognized a "narrow exception to the rule" based on our supreme court's discussion in *Reitter*: "If the officer explicitly assures or implicitly suggests that a custodial defendant has a right to consult counsel, that officer may not thereafter pull the rug out from under the defendant if he or she thereafter reasonably relies on this assurance or suggestion." *Verkler*, 260 Wis. 2d 391, ¶8 (citing *Reitter*, 227 Wis. 2d at 240-42).

¶11 In this case, the State met its burden of showing that Lagash properly conveyed the implied consent warnings as Lagash testified that he read the statutory Informing the Accused form "exactly" as it is written and placed "marking[s] on the border" next to each paragraph on the form after he read each paragraph to Conigliaro and confirmed that Conigliaro understood. *See Reitter*, 227 Wis. 2d at 230.

¶12 Conigliaro has the burden to show that Lagash misstated the warnings or otherwise misinformed Conigliaro, and that the misinformation impacted his ability to make the choice of whether to submit to the test. To do so, Conigliaro must satisfy a three-pronged test by demonstrating that: (1) "the arresting officer either failed to meet 'or exceeded' his or her duty to inform the accused driver under" WIS. STAT. § 343.305(4); (2) "the 'lack or oversupply of information' misled the accused driver; and (3) the arresting officer's failure to

inform the driver affected the driver's ability to make a choice about submitting to the chemical test." ***Reitter***, 227 Wis. 2d at 233 (citation omitted).

¶13 We take Conigliaro's argument to be that Lagash "exceeded" his duty or "oversupplied" information when Lagash told Conigliaro that he could not give legal advice and that Conigliaro could speak to a lawyer "when this was all done." Conigliaro argues that "[b]oth statements are information not contained in the Informing the Accused form. Thus, the officer clearly oversupplied information." Conigliaro fails to meet his burden on the first prong. Lagash did not "exceed[]" or "oversuppl[y]" information by telling Conigliaro, in response to Conigliaro's requests to speak to an attorney, that he was not going to give him legal advice or when he told Conigliaro it "was his choice" if he would like to consult with a lawyer *after* his decision to submit to a test. The information Lagash provided was in no way an inference that the right to counsel existed at this stage and was not false or otherwise misleading. "An accused driver's erroneous belief about the right to counsel, and the erroneous belief that an officer deprives him or her of that presumed right, should not trigger a constitutional duty for the arresting officer." ***Id.*** at 242. Lagash properly marked a "refusal" when Conigliaro repeatedly insisted on speaking to his lawyer before submitting to the test and then unequivocally refused to consent to a chemical test with a "No" response. *See **id.*** at 235 ("A defendant who conditions submission to a chemical test upon the ability to confer with an attorney 'refuses' to take the test.").

¶14 Conigliaro also argues that this situation falls under the "narrow exception" in ***Reitter*** that Lagash "implicitly" suggested that a right to counsel existed and affected his ability to make a choice about submitting to the chemical test by never advising him that his request for a lawyer could amount to a refusal. According to Conigliaro, "[w]here Deputy Lagash failed is at no point did [he] tell

Mr. Conigliaro that he did not have the right to speak with an attorney prior to making the decision about chemical testing." Lagash never explicitly or implicitly suggested that Conigliaro had the right to counsel before deciding whether to submit to a test, stating only that "when this was all done" he could speak to his lawyer. Lagash expressly told Conigliaro that he needed a yes or no answer as to whether he would submit, and Lagash had no duty to go beyond the statutory form and dispel any of Conigliaro's subjective beliefs about his right to counsel. *Id.* at 242-43. Lagash did not accept Conigliaro's repeated requests for an attorney as a refusal until Conigliaro finally "responded, No."[7]

*Conclusion*

¶15     In conclusion, Conigliaro testified that he believed he had the right to an attorney, and he maintained that insistence on Lagash's repeated requests that he submit to the test. Conigliaro's insistence on consulting with counsel before submitting to a test was unlawful. *See Neitzel*, 95 Wis. 2d at 205; *Reitter*, 227 Wis. 2d at 235. Lagash never told Conigliaro, impliedly or otherwise, that he

---

[7] Conigliaro cited to *State v. Baratka*, 2002 WI App 288, ¶15, 258 Wis. 2d 342, 654 N.W.2d 875, for the proposition that "[r]epeated requests for an attorney can amount to a refusal as long as the officer informs the driver that there is no right to an attorney at that point." Conigliaro notes that the court in *Baratka* upheld the refusal violation, but asks us to reach a different result as the officer in that case advised Baratka that he had no right to an attorney. In *Baratka*, however, the defendant never "verbally or physically refused testing," but he responded when asked to submit to a test by "twice request[ing] to speak to an attorney." *Id.* Here, Conigliaro specifically responded "No" to Lagash's third request for a chemical test; Lagash did not accept Conigliaro's first two responses as an implicit refusal or responses that "amount of a refusal." Further, as we previously concluded, Lagash did not provide Conigliaro with incorrect or misleading information such that the *State v. Reitter*, 227 Wis. 2d 213, 595 N.W.2d 646 (1999), exception would apply, and the *Reitter* court held that, apart from the exception, "officers are under no affirmative duty to advise defendants that the right to counsel does not apply in the informed consent statute." *Id.* 242-43; *see also State v. Verkler*, 2003 WI App 37, ¶8, 260 Wis. 2d 391, 659 N.W.2d 137. Under the circumstances, we conclude that *Baratka* is inapplicable.

had a right to counsel before deciding whether to submit. Lagash truthfully told Conigliaro that he would have the right to speak to a lawyer after. Conigliaro's subjective belief about his right to counsel is not recognized under the implied consent law, and as Conigliaro insisted upon counsel, Lagash properly and lawfully marked him as a refusal. We affirm.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.