STATE of Wisconsin, Plaintiff-Appellant,

v.

Cynthia DISCH, Defendant-Respondent.†

Court of Appeals

*No. 82–659–CR. Submitted on briefs January 3, 1983.— Decided June 7, 1983.*
(Also reported in 337 N.W.2d 194.)

† Petition to review granted.

For the plaintiff-appellant the cause was submitted on the briefs of *Bronson C. La Follette,* attorney general, and *Daniel J. O'Brien,* assistant attorney general.

For the defendant-respondent the cause was submitted on the brief of *Archie E. Simonson* of Madison.

Before Gartzke, P.J., Dykman, J. and W.L. Jackman, Reserve Judge.

GARTZKE, P.J. The state appeals from an order suppressing defendant's blood alcohol test result. The issue is whether the state violated defendant's due process rights when the state consumed her blood sample by testing for drugs after she moved to independently test the sample. We conclude that she was denied due process. We therefore affirm.

On August 8, 1980 defendant drove a car which collided with another. The accident injured her passenger, who died two days later. A 10 cc blood sample was taken from defendant and analyzed the day of the accident. The test result showed defendant's blood alcohol content was .121 percent.

January 29, 1981 a criminal complaint issued, charging defendant with homicide by intoxicated use of a motor vehicle, contrary to sec. 940.09, Stats. 1979–80.[1] Defendant's initial appearance was February 4, 1981. February 5, 1981 she served the prosecutor with a motion to allow her to inspect and test the blood sample. February 13, 1981 the prosecutor directed the State Crime Laboratory to test the sample for all controlled substances. The tests were performed between February 16 and 24, 1981. No controlled substances were found. February 26, 1981 defendant was bound over after a preliminary hearing. April 16, 1981 the remaining blood sample (described by

[1] Section 940.09, Stats. 1979–80, was repealed and recreated by sec. 1817g, ch. 20, Laws of 1981. The change was effective May 1, 1982. Section 2204(51)(n), ch. 20, Laws of 1981.

the trial court as a few drops) was turned over to defendant's expert, but the sample was too small for an alcohol analysis.

A State Crime Laboratory serologist testified at the suppression hearing. About 8.6 cc of the sample remained when he received it February 16, 1981. He split the sample, 5 cc to test for basic drugs and 3.6 cc for acid and neutral drugs. He said that 10 cc is the minimum amount to perform an adequate test for all controlled substances. Less blood would have been needed had he been told to look for a specific drug. He detected no controlled substances. He said that a blood alcohol test requires only one to two cc of blood.

The trial court said the state furnished no reason to question the retest value of a blood sample six months old. The court said it was impossible to determine whether the prosecutor failed intentionally or through oversight to direct that one or two cc of blood be saved from the second analysis for retesting by defendant. It found that the state had failed to show that unavoidable investigative destruction had occurred, and concluded that the good or bad faith of the state need not be determined. The court concluded that the evidence was material to defendant's guilt or innocence, that defendant's due process rights had been irretrievably denied under *Brady v. Maryland,* 373 U.S. 83 (1963), and that suppression of the test result was the only available remedy.[2]

---

[2] We reject defendant's contention that the trial court properly ordered suppression of the test result as a sanction under sec. 971.23(6), Stats., for violating her discovery rights. The court did not describe its order as a sanction for violating discovery rights. The discovery motion was untimely. A discovery motion in a felony action cannot be made until an information has been filed. Sec. 971.31(5)(b). Defendant's motion was filed over three weeks before the information was filed. The state consumed the blood samples between the time defendant filed her motion and the time the information was filed. Consequently,

*Brady* held that suppression of evidence favorable to an accused who had made a specific request for such evidence violated due process where the evidence is material to guilt or innocence, regardless of good or bad faith. *State v. Amundson,* 69 Wis. 2d 554, 577, 230 N.W.2d 775, 787 (1975). Because the destruction of evidence may prevent a showing that it was favorable to the defense, the *Amundson* court held:

> [T]he inability of the defendant to show that the destroyed evidence was exculpatory does not alone defeat the claim that its destruction and nondisclosure by the prosecution denied the defendant due process of law given the showing that the evidence was clearly material to the issue of guilt or innocence.

69 Wis. 2d at 578, 230 N.W.2d at 788.

The trial court concluded that the sample was material. We agree. In *State v. Booth,* 98 Wis. 2d 20, 27, 295 N.W. 2d 194, 198 (Ct App 1980), we held that the materiality of a breathalyzer ampoule was "obvious" in a prosecution for operating a motor vehicle while under the influence of an intoxicant. Here the blood sample is likewise material to defendant's guilt or innocence. Intoxication is an element of the crime she is charged with having committed, sec. 940.09, Stats. 1979–80. In a prosecution pursuant to the same statute, *Scales v. State,* 64 Wis. 2d 485, 494, 219 N.W.2d 286, 292 (1974), held that under sec. 885.235(1)(c), Stats., an analysis showing a blood alcohol content equal to or in excess of .1 percent is prima facie evidence of intoxication.[3] Accordingly, the accuracy of

because no discovery order existed or could have existed when the sample was consumed, the suppression order could not have been a sanction for violating a sec. 971.23 discovery order.

 [3] Section 885.235(1)(c), Stats., was made inapplicable to an action for violating sec. 940.09, Stats., by sec. 1816c, ch. 20, Laws of 1981, but the legislature subsequently again amended the statute to remove the exception in sec. 5, ch. 184, Laws of 1981.

the blood alcohol test result is material to whether defendant violated sec. 940.09, Stats. 1979–80.

The state points out that defendant offered no proof that the blood sample, six months old when she demanded its production, was still suitable to test for blood alcohol content. The state contends that absent such proof, defendant has not established materiality. It is, however, undisputed that the state had the blood sample until the unusable remnant was turned over to defendant's expert. Because defendant could not know the conditions under which the state kept the blood sample, she could not have established its suitability for testing when she sought an independent test.

Under these circumstances, we conclude that the blood sample is presumptively material, subject to the state's establishing immateriality by showing that the blood sample was no longer suitable for testing when requested by defendant. *Compare State v. Raduege,* 100 Wis. 2d 27, 32–33, 301 N.W.2d 259, 262 (Ct App 1980) (breathalyzer ampoule is presumed material, subject to rebuttal). The state did not attempt to make that showing. The trial court correctly concluded that defendant's blood sample was material.

The state contends that the trial court erroneously suppressed the evidence because it failed to find bad faith. The *Amundson* court held that the good or bad faith of the prosecutor "is a factor to be considered" in determining whether the loss or destruction of evidence resulted in a denial of due process. 69 Wis. 2d at 579, 230 N.W.2d at 788–89. *Amundson* does not convert the "factor" of bad faith into a condition precedent for the conclusion that the loss or destruction of evidence denies due process. Neither *Booth, supra,* nor *Raduege, supra,* suggested that a finding of bad faith was necessary to sustain an order suppressing a blood alcohol test result when a breathalyzer ampoule had been routinely destroyed.

The state contends that our decision is contrary to precedent, relying on *Gedicks v. State*, 62 Wis. 2d 74, 214 N.W.2d 659 (1974), and on *United States v. Love*, 482 F. 2d 213 (5th Cir.), *cert. denied sub nom. Oglesby v. United States*, 414 U.S. 1026 (1973), and *United States v. Sewar*, 468 F.2d 236 (9th Cir. 1972), *cert. denied*, 410 U.S. 916 (1973), relied upon by the *Gedicks* court. The state contends that our holding is contrary to authority from other jurisdictions, especially *State v. Kaye*, 423 A.2d 1002 (N.J. Super. 1980), *People v. Eddington*, 218 N.W. 2d 831 (Mich. App. 1974), and *Lee v. State*, 511 P.2d 1076 (Alaska 1973). The cases cited are not in point. Although they hold that a good faith or accidental consumption of evidence through scientific testing does not violate due process, none involved a prior request by the defendant for independent testing of the evidence.

Because defendant had previously requested access to the blood sample, we reject the contention that her due process rights are not violated by a good faith consumption of evidence in the course of subsequent scientific testing. To save itself from the charge of violating due process, the state must show both good faith and that the consumption of the evidence was necessary. When an accused timely moves to conduct independent scientific testing of physical evidence:

[A] heavy burden devolves upon the State either to produce a testable sample or to prove by clear and convincing evidence that the destruction of all of the substance in its possession was necessary. If it can do neither, then it should not, as a matter of fundamental fairness, be permitted to introduce into evidence the results of its test.

*People v. Taylor*, 36 N.E.2d 573, 576 (Ill. App. 1977).

*Taylor* should be applied at least where, as here, defendant has sought an independent test of the evidence before it has been consumed in scientific testing by the state. We hold that the state was required to demonstrate

that the consumption of defendant's blood sample was both necessary and done in good faith.[4]

The existence of good or bad faith and necessity are questions of mixed law and fact. The court of appeals cannot resolve disputed factual issues. *Wurtz v. Fleischman*, 97 Wis. 2d 100, 107 n. 3, 293 N.W.2d 155, 159 (1980). If the factual part of a mixed question is undisputed, only a question of law remains. *See Wisconsin Department of Revenue v. Exxon Corp.*, 90 Wis. 2d 700, 713, 281 N.W.2d 94, 101 (1979) (whether factual part of mixed law and fact fulfills a standard of law is a question of law). We hold on the undisputed facts that the state failed to show by clear and convincing evidence that it was necessary to consume defendant's blood sample to the point where the residue was insufficient for independent testing.

The state contends that because defendant's request for discovery of the blood sample was untimely under sec. 971.31(5)(b), Stats., the prosecutor had no obligation to comply with the request until after the information was filed. The state argues that the prosecutor fulfilled the state's duties to defendant by turning over the sample remnant after the information was filed and the request became timely.

The untimeliness of defendant's motion under sec. 971.-31(5)(b), Stats., and the state's compliance with the request are irrelevant to our due process analysis. The purpose of putting time limits on motions was "to prevent the use of motions as delaying devices." Judicial Council Comment to sec. 971.31(5). The time limit is a judicial administrative rule to relieve the court from ruling on discovery requests in criminal prosecutions which may not survive a preliminary examination and have not

---

[4] We do not address the issue whether the state must show necessity of the testing in the event the evidence is consumed *before* requested by defendant.

reached the information stage. We conclude that defendant's request was "timely" for purposes of due process analysis because it was made before the sample was consumed. That the state literally complied with its obligations under sec. 971.31(5)(b) does not detract from the fact that it knew of defendant's request before it consumed the evidence in testing never shown to be necessary.

Because the testing which resulted in the consumption of defendant's blood sample was not shown to be necessary, and because defendant made her request for independent testing before the evidence was consumed, we hold that the state's consumption of the sample violated defendant's due process rights. Consequently, we affirm the suppression order.

*By the Court.*—Order affirmed.