STATE of Wisconsin, Plaintiff-Appellant-Petitioner,

v.

Cynthia DISCH, Defendant-Respondent.

Supreme Court

No. 82-659-CR. Argued February 29, 1984.—
Decided June 27, 1984.

(Also reported in 351 N.W.2d 492.)

For the plaintiff-appellant-petitioner the cause was argued by *Daniel J. O'Brien,* assistant attorney general, with *Bronson C. La Follette,* attorney general, on the briefs.

For the defendant-respondent there was a brief by *Archie E. Simonson,* Madison, and oral argument by *Mr. Simonson.*

HEFFERNAN, C.J.   This is a review of the court of appeals decision in *State v. Disch,* 114 Wis. 2d 47, 337 N.W.2d 194 (Ct. App. 1983), which affirmed a pretrial order of the circuit court for Dane county, Moria Krueger, Circuit Judge, suppressing the results of a blood test in a prosecution for homicide by intoxicated use of a motor vehicle (sec. 940.09, Stats. 1979–80) on the grounds that the defendant Disch was denied due process because her demand for the production of a portion of the original blood for retesting could not be accommodated. The prosecution used the blood remaining after the original test to conduct a test for controlled substances, thus denying Disch a portion of the sample for testing for alcohol by her own experts.

We reverse the court of appeals and hold that the original blood alcohol test need not be suppressed. Due

process in respect to the blood alcohol test is afforded the defendant because she had the right to have a second test for intoxication conducted by the police or, alternatively, another or different alcohol test conducted by persons of her own choosing; she had the statutory right to inspect the machine used for determining the Blood Alcohol Content (BAC) ; she had the right to confront and cross-examine all persons in the chain of custody of the original blood sample; and she had the constitutional right to confront and cross-examine the person who performed the test to determine the BAC.

We conclude these rights, which are secured by the statutes and by the constitution, afford the defendant due process—the right to a fair trial. Additionally, there is no evidence whatsoever to show that, at the time the demand was made for the production of the blood sample, the sample could have produced a test result that either would verify or disprove the original test. There was no evidence produced by the defendant to show that the sample was testable for alcohol content. We emphasize, however, that whether or not the sample was testable is irrelevant to the question of whether due process can be afforded only when the blood sample is produced by the state at the defendant's request. Due process does not rest on so narrow a basis.

Due process is afforded by the elements of cross-examination of witnesses and the inspection of the machine, and is not dependent upon the production of the remnants of the original sample. The results of a blood test mandated by statute are prima facie correct, and the results are statutorily admissible. Impeaching factors which may result from cross-examination of those who have performed the tests go to the weight of the evidence or the credence to be given to the witnesses by the factfinder. Assuming authentication of the sample tested, it is not permissible to suppress the results of a blood test

(or a breathalyzer test) because no retest was made or could be made.

In this case, Cynthia Disch was involved in an automobile accident on August 8, 1980. A blood sample of approximately 10 cc. of blood was taken shortly after the accident. On the same day the blood was extracted, a blood test at the State Laboratory of Hygiene revealed a BAC of .121 percent by weight.

Two days later, a passenger in the Disch automobile died as the result of the accident. On January 29, 1981, a criminal complaint was issued which charged Disch with homicide by intoxicated use of a motor vehicle, contrary to sec. 940.09, Stats. 1979–80.

After the initial appearance on February 4, 1981, but prior to arraignment, Disch, on February 5, 1981, filed a motion to inspect the blood sample and also moved to suppress the results of the test.[1] After the motion to produce the blood sample was filed, the assistant district attorney in charge of the case discovered that the deceased passenger was a drug user. He then directed that the remaining sample of Disch's blood be sent to the crime laboratory for the determination whether the defendant's blood contained any controlled substance. The examina-

---

[1] It is worthy of note, in view of the subsequent claim of the defendant that the sample of blood continued to be material, that, in the motion of February 5, 1981, counsel recited that, because of delay in charging:

"[E]vidence that would have been exculpatory and in aid of her defense has been lost or destroyed. Specifically, but not exclusively, the blood sample which allegedly was obtained for purposes of determining blood alcohol content has, because of the passage of time, changed its chemical nature, thereby preventing the defendant from its examination under the same conditions as examined by the State."

This is a specific statement by defense counsel that, on the date of the demand for the blood sample, it was not testable, *i.e.*, it no longer was material on the question of intoxication.

tion of the blood sample at the crime laboratory failed to reveal the presence of any controlled substance.[2]

After preliminary hearing on February 26, 1981, the defendant was bound over for trial. On April 16, 1981, the tube containing the blood sample was turned over to an expert for the defense, who, on April 24, reported that the few drops of blood remaining in the sample tube were insufficient to perform a test for alcohol.

After filing of the information, on April 24, 1981, motions were renewed for suppression of the blood test on the additional grounds that "defendant asserts that the State has destroyed the blood sample taken from the defendant thereby depriving the defendant from exercising her right for discovery."

Subsequently, a hearing was held on December 3, 1981, on defendant's motion to suppress the blood test results. The motion was granted, and the blood test results were ordered suppressed on March 18, 1982.

The trial judge's memorandum opinion detailed the facts and concluded there was nothing to show that the consumption of the blood sample in the controlled substances analysis was "unavoidable" as a part of a proper investigation because that test was unrelated to the charge of homicide by intoxicated (alcohol) use of a motor vehicle. It accordingly found that there was no investigative reason to justify the destruction. The opinion recited that the blood sample was "material," because the

---

[2] An argument which surfaced at oral argument was that, if the blood was tested for controlled substances, it was testable and therefore material. The record fails to show whether or not a test for controlled substances was possible at this late date. All the record shows is that no controlled substances were revealed. Also, even if the blood were testable for controlled substances, that does not demonstrate a test material to the charged offense. The only materiality at issue or pertinent to the case is whether there was alcohol-induced intoxication. In the context of this case, only testability in respect to BAC could be material.

blood sample could not be distinguished from the ampoule described in *State v. Booth,* 98 Wis. 2d 20, 295 N.W. 2d 194 (Ct. App. 1980), which was found to be of "obvious" materiality. The trial court held:

"[T]he due process rights of the defendant have been irretrievably denied by virtue of the actions of the agent of the State of Wisconsin, and that the only remedy available to this Court is the suppression of what may well be a critical piece of evidence regarding the defendant's blood/alcohol content because of the resulting inability of the defendant to perform independent testing on the result sought to be introduced by the State."

The trial court, having determined that the consumption of the blood resulted from activities of the state not necessary for the investigation of intoxication by the consumption of alcohol, found it unnecessary to make a determination of whether the conduct of the state was in good faith or in bad faith.

Additionally, the trial court did not determine that Disch was under arrest prior to taking the blood sample, as is required by sec. 343.305 (2) (am), Stats. 1979–80. Nor did it address the question urged by the state that the request for a blood sample was not timely made because the case was not yet within the jurisdiction of the circuit court when the demand was made, *i.e.,* the request was made before the preliminary hearing and before arraignment, and according to sec. 971.31 (5) (b), 1979–80, such demands are not permitted until after an information has been filed. The record shows the information was not filed until March 2, 1981.

Thus, the case is in the pretrial stage. Appeal was proper, however, under sec. 974.05 (1) (d) 2, Stats. 1979–80, as being from any order which has the substantive effect of suppressing evidence.

The court of appeals affirmed, using the same reasoning utilized by the trial court. It said the materiality of

the blood sample requested by the defendant was analogous to the materiality of a breathalyzer ampoule, which *Booth, supra,* said was "obvious." The trial court, relying upon *Booth,* failed, as did *Booth,* to explore whether the materiality of the ampoule or blood sample at the time of the original test necessarily was identical to its materiality at a later time. It also stated that:

"[A]n analysis showing a blood alcohol content equal to or in excess of .1 percent is prima facie evidence of intoxication. Accordingly, the accuracy of the blood alcohol test result is material to whether defendant violated sec. 940.09, Stats. 1979–80." Pp. 50–51.

The logic of this statement is impeccable, but, like the statement in *Booth*—that the materiality of the ampoule is "obvious"—the statement overlooks the possible transitoriness of that materiality.

The court of appeals, having determined that the blood sample was material at the time of its extraction and test thereafter on the same day, postulates a continuing materiality. It exonerates the defendant from showing materiality:

"Because defendant could not know the conditions under which the state kept the blood sample, she could not have established its suitability for testing when she sought an independent test." P. 51.

Unstated is the failure of the defendant to even assert that a blood sample taken on August 8, 1980, although kept under optimum conditions, would be testable for blood alcohol in March or April of 1981. Also unnoticed by the court of appeals was the specific assertion, referred to earlier, in defendant's motion of March 5, 1981, that a blood sample taken in August of 1980 would have undergone chemical changes and could not be tested for alcohol in March of 1981.

While the court of appeals makes no attempt to set aside established law that materiality must be shown by

the defendant demanding the production of evidence,[3] it resorts to the "analogous" presumption of continuing materiality in respect to a breathalyzer ampoule as determined by the court of appeals in *Booth* and *State v. Raduege,* 100 Wis. 2d 27, 301 N.W.2d 259 (Ct. App. 1980). Initially, it should be observed that, even were there a proper scientific basis for finding presumptively continuing materiality in respect to a breath ampoule— and we determined in *Walstad*[4] there was none—there is no scientific basis for concluding or presuming that a blood sample remains material for a period in excess of six months. The application of the presumption to a blood sample, insofar as the record reveals, is totally without scientific foundation and is unsupported by any expert opinion or any evidence. Nor do we conclude that a court—this one or the court of appeals—can take judicial notice that an item of physical evidence, such as blood, which is originally capable of testing and is therefore a source of material evidence at a particular time presumptively continues for an indeterminate time in the future to be testable for BAC and to be a source of evidence that is material. The exhaustive findings of the trial court in *Walstad* demonstrate that, even in the case of the ampoule used in the breathalyzer, materiality is transitory indeed.

The court of appeals also appeared to state that, because the state had custody of the blood sample and it was destroyed or consumed during the course of that custody and, hence, the defendant could not examine that sample, it was presumptively material. Again, what is unproved, but is assumed by the court of appeals, is that a blood sample kept six months could have yielded test results

---

[3] *State v. Amundson,* 69 Wis. 2d at 554, 577–78, 230 N.W.2d 775 (1975); *United States v. Bryant,* 439 F.2d 642, 648 (D.C. Cir. 1971); *Brady v. Maryland,* 373 U.S. 83 (1963).

[4] *State v. Walstad,* 119 Wis. 2d 483, 351 N.W.2d 469 (1984).

probative of the accuracy or inaccuracy of the earlier test. The court of appeals held:

"[T]he state was required to demonstrate that the consumption of defendant's blood sample was both necessary and done in good faith." Pp. 52–53.

In the instant case, the defendant does not contend that the state's conduct was not in good faith. In fact, the defendant so stipulates. Thus, it appears that the court of appeals decision turns on the fact that the test for controlled substances was unnecessary, because the defendant was charged only with intoxication resulting from the consumption of alcohol. However, failing in proof that the sample of blood would have been material, *i.e.*, testable for alcohol had it not been consumed, it appears that the state has been penalized for its failure to produce (as the result of its unnecessary consumption) a sample that had no known materiality or relevance. This exalts form over substance.

Although the court of appeals purports that the retest is related to the defendant's right of due process, only peripherally is there a relationship. It is undisputable that due process is not a mechanistic requirement of American jurisprudence. It is a test of fundamental fairness and is not dependent upon the state's conformity with irrelevancies. A defendant is entitled to a fair trial but not a perfect one. An omission or failure of the state that does not compromise fundamental fairness or does not result in prejudice to a defendant does not result in a reversal of a guilty verdict.

In *United States v. Valenzuela-Bernal*, 458 U.S. 858 872 (1982), the United States Supreme Court stated:

"Due process guarantees that a criminal defendant will be treated with 'that fundamental fairness essential to the very concept of justice. In order to declare a denial of it we must find that the absence of that fairness fatally

infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial.' *Lisenba v. California,* 314 U.S. 219, 236 (1941)."

It cannot seriously be contended that the failure of the state to produce a six-month-old specimen of blood that was not in any way demonstrated to be material to the defendant's guilt or innocence deprived, or would deprive— since this is a pretrial suppression order—a defendant of a fair trial. Its production or nonproduction is irrelevant.

Even were this aged sample capable of retesting for BAC, its nonproduction would not deprive a defendant of a fair trial, and, in no event, should the results of the original test be suppressed. Under the statutes, the blood test derived from a properly authenticated sample by legislative fiat is admissible. Sec. 885.235(1), Stats. Whether the result is to be given credence by a finder of fact is dependent upon the exercise of a whole panoply of due process safeguards that protect a defendant's right to a fair trial, whether or not at a particular time a sample of blood is retestable for BAC.

Initially, it is to be noted that in Wisconsin any person who drives or operates a vehicle upon the public highway is deemed to have given consent for tests of breath, blood, or urine for the purpose of determining BAC. In addition to reciting to a suspected person the obligations under the Implied Consent Law, a law enforcement officer requesting a test is obliged to inform the suspect that he or she has the right to another test, an additional or second test of a different kind than that requested by the law enforcement officer. Thus, two tests may be demanded by the suspect's option at the state's expense. Moreover, the suspect, at his or her own expense, may demand that the test be administered by any qualified person, which we construe as meaning any qualified person selected by the suspect. *See,* generally, sec. 343.305, Stats. 1979–80. Ad-

ditionally, the person must have been placed under arrest, which requires evidence of facts demonstrating probable cause.

The defendant is in no case limited in proof to the single test first selected by the law enforcement agency. There is the express and mandatorily required opportunity to have an additional test and by an independent operator. Surely this is an impartial and near-controlling factor, which protects the due process right of a defendant. A defendant, under the wise provisions of the Wisconsin law, is not dependent on a single test result directed by a law enforcement official. The suspect can have his own test at a time when the test results will be clearly material in respect to BAC.

In addition to having another test furnished upon request at state expense as a due process safeguard, the defendant may challenge the test results on the basis of the lack of the authentication of a test sample, *i.e.*, the chain of custody. If a test is not proved to be the test performed on the sample that came from the defendant's person, it can be suppressed. This is an unlikely turn of events, but the weight and credence to be given to the results can be tested by various components of due process: Was the test conducted in the manner directed by statute, *e.g.*, were the proper admonitions and options afforded; was the defendant under arrest; was a citation served upon him; was the procedure utilized in taking the test appropriate to accepted medical and scientific standards; was the test performed within the time period allowed by statute; was the person who performed the test a qualified person as required by the statutes; was the person who performed the test analysis qualified under the statute and did he or she have the necessary qualifications as an expert to testify with credibility. Other due process inquiries can explore such questions as: What is the experience of the operator who drew the blood and the ana-

lyst who reached a conclusion in respect to the BAC; what was the nature of the test or analysis itself; was the machine (usually a gas chromotograph testing device) properly tested and balanced before and during the analysis;[5] and was it an approved type of testing device.

The machine used in blood test analysis performs a function analogous to that of the machine used in the breath test. The mechanical device is standardized by the operator to determine whether it is at that time properly adjusted to give accurate results.

In each case, the correctness of the result is ultimately dependent upon the training, skill, and attention to the analysis given by the operator. This is best revealed by the utilization of that great engine for the truth—cross-examination. Thus, can it best be determined whether due process is afforded.

In any event, it would be erroneous as a matter of law to hold the blood test inadmissible. Sec. 343.305(7), Stats. 1979–80, provides:

"(7) At the trial of any civil or criminal action or proceeding arising out of the acts committed by a person alleged to have been driving or operating a motor vehicle while under the influence of an intoxicant or a controlled substance, the results of a test administered under sub. (2)(b) or (c) or (5) are *admissible* on the issue of whether the person was under the influence of an intoxicant or a controlled substance. . . ." (Emphasis supplied.)

Section 885.235(1), Stats. 1979–80, provides that a chemical analysis of blood, breath, or urine is admissible if the sample was taken within two hours of the event to

---

[5] The record shows that, as a part of the test of a blood sample, the machine is tested with three other solutions—one of pure water, which should show no alcohol, and two aqueous solutions of alcohol in concentrations of .01% and .02%. If these tests are not made or the test results of the standardized solutions are aberrant, the machine is not operating properly.

be proved. Sec. 885.235 (1) (c) provides that an analysis of 0.1 percent or more is prima facie evidence of the fact that the person tested was under the influence of an intoxicant.

The presently effective statute, sec. 885.235 (1), Stats. 1981–82, provides that a test of a person's blood, breath, or urine is admissible if the sample was taken within three hours after the event to be proved. The criminal analysis is to be given evidentiary effect without requiring any expert testimony. Sec. 885.235 (1) (c) provides that an analysis of 0.1 percent or more in a person's blood is prima facie evidence that the person is under the influence of an intoxicant and is prima facie evidence of a BAC of 0.1 percent or more.

The importance of these statutes is that blood alcohol test results are admissible into evidence, and it is error to exclude them from evidence. An authenticated test— drawn from the person in question by a qualified person —by legislative edict is admissible. It may not be excluded from evidence. This is completely in accord with the rules of evidence established by this court. The general rule of evidence, Rule 904.02, is that, "All relevant evidence is admissible." Rule 904.01 defines "relevant evidence" as

"[E]vidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

Blood test results are obviously relevant evidence of a fact of consequence in an action and are of the type to be admitted into evidence under general rules of evidence adopted by this court. Additionally, they are mandated by the legislature to be admissible.

The rationale for *ipso facto* admissibility of scientific tests of this kind has been reiterated on numerous occa-

sions. In *State v. Trailer Service, Inc.*, 61 Wis. 2d 400, 407, 212 N.W.2d 683 (1973), this court said:

"[A] method or process for testing which is expressly authorized by statute is entitled to a prima facie presumption of correctness of purpose. In such a case, all that needs to be proved is that the method was followed."

The court went on to state:

"A scientific or medical method not recognized as acceptable in the scientific or medical discipline as accurate does not enjoy the presumption of accuracy, *i.e.,* lie-detector tests. *See* cases cited at Anno. (1952), *Physiological or Psychological Truth and Deception Tests,* 23 A.L.R. 2d 1306, 1308, sec. 2; *State v. Bohner* (1933), 210 Wis. 651, 246 N.W. 314; *LeFevre v. State* (1943), 242 Wis. 416, 8 N.W.2d 288; *State v. Perlin* (1955), 268 Wis. 529, 68 N.W.2d 32. But tests by recognized methods need not be proved for reliability in every case of violation. Examples, speedometer, breathalyzer, radar. *See* cases cited at Anno. (1973), *Speeding—Proof—Radar,* 47 A.L.R.3d 822, 831, sec. 3; *see also:* Anno. (1967), *Intoxication—Tests—Statutes,* 16 A.L.R.3d 748; 46 A.L.R.2d 1176; 127 A.L.R. 1513; 7 Am. Jur. 2d, *Automobiles and Highway Traffic,* p. 878, sec. 334. These methods of measurement carry a prima facie presumption of accuracy. Whether the test was properly conducted or the instruments used were in good working order is a matter of defense. The administration of law would be seriously frustrated if the validity of basic and everyday accepted tests had to be a matter of evidence in every case in the first instance." 61 Wis. 2d at 408.

The court held that the state was under no duty to prove what was a matter of defense.

In *Suspension of Operating Privilege of Bardwell,* 83 Wis. 2d 891, 900, 266 N.W.2d 618 (1978), the court addressed the issue of whether Bardwell's refusal to submit to a breath test, because he considered it to be unreliable, was a reasonable refusal under sec. 343.305, Stats. In the course of the decision this court stated:

" 'A *chemical test specified by statute may not be deemed unreliable as a matter of law.* The statute specifically designates the arresting officer as the one to determine the test to be administered. *Furthermore, plaintiff had an opportunity to contact his own physician to exercise the right granted to him in subsection (g), if he were concerned in good faith about the reliability of the breath test.*' (Emphasis added.)" 83 Wis. 2d at 899–900, quoting with approval *Elliott v. Dorius*, 557 P.2d 759 (Utah 1976).

After considering *Trailer Service, Inc., supra,* the *Bardwell* court concluded that:

"[I]n *Trailer* we implicitly held what is explicit in *Elliott,* that a chemical test specified by a statute may not be deemed unreliable as a matter of law. We make that holding explicit now." 83 Wis. 2d at 900.

After *Bardwell,* not only are recognized methods of testing authorized by statute entitled to a prima facie presumption of accuracy but such recognized tests may not be deemed unreliable as a matter of law. Both the trial court and the court of appeals in the instant case violated this precept by holding as a matter of law the blood test was inadmissible.

In *State v. Neitzel,* 95 Wis. 2d 191, 289 N.W.2d 828 (1980), this court resolved the issue of whether a person was entitled to consult counsel before deciding to take or to refuse to take a chemical test for intoxication, as provided in sec. 343.305, Stats. To support its holding that a person is not entitled to consult with counsel, this court stated that there was no reason why counsel's presence was necessary to assure the scientific accuracy of the test. *Neitzel,* 95 Wis. 2d at 203.

"Because the chemical testing procedure under the implied consent law is mechanical in nature and entitled to a presumption of accuracy, the results can be fairly questioned at trial, irrespective of whether counsel was present at the test." *Id.*

The results of the presumptively accurate scientific test can be questioned at trial, as we have pointed out above, but such questioning goes to weight and credibility, not to admissibility of the test.

The court of appeals decision of *City of New Berlin v. Wertz,* 105 Wis. 2d 670, 314 N.W.2d 911 (Ct. App. 1981), held that the state was not required to prove compliance with certain sections of the administrative code as a foundational prerequisite to the admission of the results of the breathalyzer test. The rationale employed by the court of appeals was that the breathalyzer test carried a prima facie presumption of accuracy and the question of how accurately the test was performed went to the weight to be given the test, not its admissibility. 105 Wis. 2d at 674.

"Challenges to the admissibility of the test . . . may arise before trial . . . . Regardless of how the challenge is raised, the court must give careful consideration to the prima facie presumption of accuracy accorded the test by legislative enactment and case law in ruling on the test's admissibility. The court must also keep in mind that *generally* an attack on the qualifications of the operator, the methods of operation or the accuracy of the equipment is a matter of defense and goes to the weight to be accorded to the test and not to the test's admissibility." 105 Wis. 2d at 675 n. 6.

Any contentions that the test result is unreliable or inaccurate goes only to the weight of the evidence as a matter of defense, not to its admissibility.

The case before the court involves a blood sample which was withdrawn from the defendant after she was involved in an accident in which other individuals were harmed. A blood sample is a chemical test expressly authorized by statute. Sec. 343.305(1), Stats. 1979–80. As such, because a blood analysis is a scientific test done by recognized methods, the results of the analysis need not

be proved for reliability because it carries a prima facie presumption of accuracy *(Trailer Service, Inc.)* and is statutorily admissible.

The prima facie presumption of accuracy accorded recognized tests authorized by statute is a permissive inference or rebuttable presumption. The accuracy of the blood-test result is presumed, but the defendant may come forward with some evidence in rebuttal in an effort to show that the result is in fact not accurate. The trier of fact is allowed, not required, to find the result of the test accurate, and the presumption places no burden of any kind on the defendant. The result of a chemical test, although admissible, is open to rebuttal by the defendant, as a matter of defense, to adduce countervailing evidence of the unreliability or inaccuracy of the result. It is at this stage, after admission, that the defendant may attack the weight and credibility to be given the test.

Due process guarantees the accused a fair trial, and any violation of fundamental fairness will constitute a denial of that guarantee. It is granted that a defendant is denied fundamental fairness when evidence material to guilt or innocence is unavailable. *State v. Amundson,* 69 Wis. 2d 554, 230 N.W.2d 775 (1975) ; *Brady v. Maryland,* 373 U.S. 83 (1963) ; *United States v. Agurs,* 427 U.S. 97 (1976). Such situation does not arise when a blood alcohol analysis is performed. The defendant has the machine available for inspection and has the opportunity to request a copy of the blood alcohol report compiled by the analyst. The names of the individuals who drew the blood or analyzed it are also available to the defendant so they can be cross-examined. It cannot be argued that evidence material to guilt or innocence is being withheld. The defendant has the opportunity to confront and challenge what might be characterized as the most damning piece of the evidence the state has against her—the blood sam-

ple test "result." Because the defendant has the opportunity to question the accuracy of the blood analysis by cross-examination of the individuals who performed the analysis and to make an examination of the machine and of the analysts' and experts' reports, due process is afforded.

While evidence may be suppressed in extreme cases when a party flouts a proper discovery order, this did not occur in this case. In *State v. Humphrey*, we said, "[N]o sanction [of that nature] is appropriate unless the state has breached a known duty." 107 Wis. 2d 107, 116. The district attorney's duty is "to seek to know of the existence of . . . reports which he should disclose to the defense especially when scientific reports were requested." *Wold v. State*, 57 Wis. 2d 344, 350, 204 N.W.2d 482 (1973). Here there is no allegation that any scientific reports were withheld. No statute and no case law in Wisconsin, save the court of appeals decision in the instant case, which we reverse, requires the production of a blood sample. No duty devolves upon the district attorney to preserve or maintain a quantity of a blood sample in order that a defendant may retest the blood, as discussed above, nor does due process require the retention and production of the sample.

Sections 971.23 (4) and (5), Stats. 1979–80, place a duty of preservation of physical evidence which the state intends to introduce in evidence or which it intends to introduce at trial for scientific analysis. A blood sample, however, is not to be introduced at trial. The result of the blood alcohol analysis is to be introduced into evidence. Under the statutes, the blood test results are admissible.[6] The disclosure by the state of the blood alcohol

---

[6] Because of the fact that the legislature has directed that the various blood test results are to be admissible and the blood samples *per se* will not be introduced as evidence at trial, it is clear that the production of blood samples for inspection for the

analysis and the names of the technician(s) who drew or analyzed the blood comports with the concern that the trial be "more a 'quest for truth' than a 'sporting event.' " *United States v. Bryant*, 439 F.2d 642, 644 (D.C. Cir. 1971). The disclosure of the analysis, reports, and names of the technicians also comports with this court's recognition that surprise should be avoided with respect to scientific proof and testimony of experts. *Wold*, 57 Wis. 2d at 351. With such information in hand, the defense can test or rebut the accuracy or credibility of the blood analysis.

Accordingly, we reverse the decision of the court of appeals. The blood test result was admissible as a matter of statute law. It was, insofar as the record shows, drawn by competent persons qualified under the statutes to extract the blood and make the analysis. It was error for the trial court to rule as a matter of law that the test was to be suppressed because a blood sample was not delivered to the defendant for a retest. It was error to hold as a matter of law that the test approved by the legislature was not reliable because no blood for a retest was produced. It was error to construe the nonproduction as a denial of due process when there was no evidence whatsoever that the sample was retestable; and even were we to assume that at some point a retest would have been possi-

purpose of testing for alcohol at the request of a defendant is not a due process requirement for admission. We have, however, no occasion in the present review to explore whether or not secs. 971.23(4) and (5), Stats., are inapplicable where there is a demand to produce for analysis other types of substances which will not be physically produced by the prosecution as evidence at trial, but in respect to which evidence of their nature or composition (*e.g.*, controlled substances), will be offered in evidence and there is no express statutory direction that the test results are admissible. We do not in this case intend to foreshadow or predict the holding of this court in the event such question were presented.

ble, due process, the right to a fair trial, was fully afforded by the right to alternate and additional blood tests and the full and unlimited cross-examination afforded in Wisconsin to rebut the presumption of prima facie accuracy of the blood test. Ample and full opportunity is afforded a defendant in every case to cross-examine key persons involved in the taking and testing of the blood sample. In this panoply of rights, it is strange indeed that the relevant—the key piece—of evidence, the blood test result, was suppressed because the production and retest of blood of dubious materiality was not possible.

Assuming that a blood test is administered under the rules set forth in the statutes and assuming that a suspect is properly advised by the police agency, a test result of a blood sample which is properly authenticated is admissible and is not to be excluded from evidence. The test, as pointed out above, may be discredited and its evidentiary weight attacked, but it is nonetheless admissible.

Because the court of appeals and the trial court did not see fit to rule on the defendant's contention that the blood test was not appropriate because the defendant had not been issued a citation before the test, as required by sec. 343.305 (2) (b), Stats. 1979–80, we remand to the trial court for a factual determination from the record unless the defendant requests the opportunity to elicit further evidence.

We have seen, following the decision in *Booth* in 1980, a seemingly endless series of battles between experts on the retestability of breathalyzer ampoules. We are convinced that the claim that due process could only be preserved for defendants by such retests was illusory. As a consequence, based on the findings of fact of the trial court and on the rational of *State v. Walstad,* 119 Wis. 2d 483, 351 N.W.2d 469 (1984), we have overruled *Booth* and its progeny. The *Booth* series of cases have made the enforcement of our highway traffic laws relating to

driving or operating under the influence of alcohol more difficult to enforce in a timely fashion without affording any substantial protection to defendants that is required by due process. We refuse to sanction a new tactic for delay in the enforcement of laws designed to reduce the hazards of driving while intoxicated—the allegation and contention by defense counsel that failure to preserve and to allow a retest of a blood sample is a denial of due process warranting a suppression of a properly conducted and prima facie accurate blood test. It is not a denial of due process. Due and appropriate process fully consistent with the constitutional requirements of a fair trial is afforded by the statutes, the rules of evidence, and rules of criminal procedure.

*By the Court.*—Decision reversed and cause remanded to the circuit court for further proceedings consistent with this opinion.

SHIRLEY S. ABRAHAMSON, J. (concurring). I concur in the majority's holding that the defendant's right to due process was not violated when the state consumed all of the blood sample for its own testing. The defendant presented no evidence that a blood sample can be tested accurately for blood alcohol content after the passage of time.

I do not, however, read sec. 971.23 (4) and (5), Stats. 1979–80, as narrowly as does the majority. I agree with the majority that this statute requires the state to preserve the physical evidence which the state intends to introduce in evidence at trial or which it intends to introduce at trial for scientific analysis. Slip op. p. 478, *supra*, and note 6. But the majority apparently concludes that the state has no duty to preserve a blood sample (or the portion which has not been subject to analysis) under sec. 971.23 (4) and (5), since it is the scientific analysis and not the blood itself which is being introduced in evidence

at trial. I read sec. 971.23 (4) and (5) as placing a duty on the state to preserve, whenever it can reasonably do so, the physical evidence it has subjected to scientific analysis (or any part of it which has not been consumed in the analysis) when it intends to introduce either the physical evidence or the test result in evidence at trial.

WILLIAM A. BABLITCH, J. (concurring). The record in this case indicates that most of the blood sample taken from the defendant was accidentally destroyed after the state subjected it to tests for controlled substances, thereby leaving an insufficient amount to enable the defendant to conduct any tests. Because of the absence of any finding of bad faith, intentional misconduct, or *malicious* destruction of the blood sample on the part of the state, and because the defendant failed to present evidence to establish the materiality of the sample, I concur in the result. I do not join the majority opinion for the reasons set forth in my concurring opinion in *State v. Ehlen,* 119 Wis. 2d 451, 351 N.W.2d 503 (1984), also decided today.

I am authorized to state that JUSTICE WILLIAM G. CALLOW joins in this concurring opinion.