STATE of Wisconsin, Plaintiff-Respondent,

v.

Jack E. THURK, Defendant-Appellant.†

Court of Appeals

*No. 98–0251–CR. Submitted on briefs September 4, 1998.—Decided January 14, 1999.*

(Also reported in 592 N.W.2d 1.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Christopher A. Mutschler* of *Anderegg & Mutschler, LLP* of Fond du Lac.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Susan M. Crawford*, assistant attorney general.

Before Dykman, P.J., Eich and Deininger, JJ.

DYKMAN, P.J. Jack E. Thurk appeals from a judgment convicting him of homicide by intoxicated use of a vehicle, contrary to § 940.09(1)(a), STATS. Thurk contends that the trial court erred in not suppressing his blood test results after he allegedly

requested and was denied an alternate test. We conclude that because Thurk was not placed under arrest prior to submitting to the blood test, he had no statutory right to an alternate test. Accordingly, we affirm.

## BACKGROUND

While Jack E. Thurk was driving his pick-up truck in the early morning of August 25, 1996, he struck and killed a motorcyclist. Shortly after the accident occurred, Sergeant Don Morey of the Waupaca County Sheriff's Department was dispatched to the scene to investigate. During questioning, Thurk admitted to Sergeant Morey that he was the driver of the truck that struck the motorcyclist, and that he had been drinking. Sergeant Morey asked Thurk how much he had to drink, and he said that he had "fifteen to twenty beers." Sergeant Morey then informed Thurk that while he was not under arrest, he was going to be taken to the New London Family Medical Center for a blood test. Thurk then said something to the effect of "I'll give you a breathalyzer test" or "why don't you perform a breathalyzer test." Sergeant Morey responded, "No, we are not going to do the breathalyzer. We will be going in for the blood test." He stated that a blood sample was necessary in the case of fatal accidents.

Sergeant Morey took Thurk to the New London Family Medical Center where he voluntarily submitted to a chemical test of his blood. The test results indicated that Thurk had an estimated blood alcohol concentration of .24 percent at the time of the accident. Sergeant Morey later testified that he never read the Informing the Accused form to Thurk prior to administering the test, because Thurk had not been placed under arrest.

Thurk was later arrested and charged with homicide by the operation of a motor vehicle while under the influence of an intoxicant, contrary to § 940.09(1)(a), STATS., and with homicide by the operation of a motor vehicle with a prohibited alcohol concentration, contrary to §§ 940.09(1)(b) and 340.01(46)(a), STATS.

Thurk filed a motion to suppress the results of his blood test on the grounds that the police violated his statutory right to an alternate test under § 343.305(5)(a), STATS. The trial court denied his motion, holding that the provisions of the implied consent law did not apply because Thurk was not under arrest when he submitted to the blood test or requested the breathalyzer test. Thurk was later convicted of homicide by intoxicated use of a vehicle, contrary § 940.09(1)(a), STATS. He appeals.

## DISCUSSION

■

Thurk asserts that when he asked for or offered to submit to a breathalyzer test, he was requesting an alternate test. And because the breathalyzer test was not administered, his blood test results should have been suppressed. When we review the denial of a motion to suppress evidence, the trial court's findings of fact will be upheld unless they are clearly erroneous. Section 805.17(2), STATS.; *see State v. Eckert*, 203 Wis. 2d 497, 518, 553 N.W.2d 539, 547 (Ct. App. 1996).

■

The implied consent law, which is set out under § 343.305(2), STATS., provides that drivers in the State of Wisconsin are deemed to have given consent to one or more tests of their breath, blood or urine, for the purposes of determining their blood alcohol concentration. *See State v. Rydeski*, 214 Wis. 2d 101, 109, 571

N.W.2d 417, 419 (Ct. App. 1997). The purpose behind the implied consent law is to facilitate the gathering of evidence against drunk drivers. *See State v. Neitzel*, 95 Wis. 2d 191, 203, 289 N.W.2d 828, 835 (1980).

Section 343.305(3), STATS., sets out when a law enforcement officer may request or require that a driver submit to one or more of these tests. The pertinent language is as follows:

> (3) REQUESTED OR REQUIRED. (a) *Upon arrest of a person* for violation of . . . § 940.09 where the offense involved the use of a vehicle, a law enforcement officer may request the person to provide one or more samples of his or her breath, blood or urine for the purpose specified under sub. (2). . . .
>
> (am) *Prior to arrest*, a law enforcement officer may request the person to provide one or more samples of his or her breath, blood or urine . . . whenever a law enforcement officer detects any presence of alcohol, a controlled substance, a controlled substance analog or other drug, or a combination thereof, *on a person driving or operating or on duty time with respect to a commercial motor vehicle or has reason to believe the person is violating or has violated § 346.63 (7). . . .*
>
> (b) *A person who is unconscious or otherwise not capable of withdrawing consent* is presumed not to have withdrawn consent under this subsection, and if a law enforcement officer has probable cause to believe that the person has violated . . . § 940.09 where the offense involved the use of a vehicle, or detects any presence of alcohol, controlled substance, controlled substance analog or other drug, or a combination thereof, on a person driving or operating or on duty time with respect to a commercial motor vehicle or has reason to believe the person has violated § 346.63 (7), one or more sam-

ples specified in par. (a) or (am) may be administered to the person.

(Emphasis added.)

We conclude that none of these provisions apply in this case. Paragraph (3)(a) does not apply because Thurk was not placed under arrest until after the blood test was administered and analyzed. Paragraph (3)(am) is inapplicable because Thurk is not a commercial driver.[1] Paragraph (3)(b) does not apply because

---

[1] The language in § 343.305(3)(am), STATS., states that a law enforcement officer may request a blood, breath or urine sample from "a person driving or operating or on duty time with respect to a commercial motor vehicle" whenever the officer detects any presence of drugs and/or alcohol on his or her person. We read this particular statutory provision as applying only to commercial drivers. This conclusion is supported by the other provisions within the implied consent statute, which also use this above-quoted language. *See, e.g.,* §§ 343.305(4m), (4m) (b), (4m)(c) and (5)(d), 343.40(7)(b) and (9)(am), STATS. In contrast, the first sentence in § 343.305(2), states that "[a]ny person who is on duty time with respect to a commercial motor vehicle or drives or operates a motor vehicle upon the public highways of the state" is subject to the implied consent statute. We read this statutory section as applying to both commercial and noncommercial drivers.

Further support for our interpretation can be found in § 343.305(3)(am), STATS., which states that an officer may ask a driver to submit to a test if he or she believes that the driver is violating or has violated § 346.63(7), STATS. Section 346.63(7) reads as follows:

(a) No person may drive or operate or be on duty time with respect to a *commercial motor vehicle* under any of the following circumstances:

1. While having an alcohol concentration above 0.0.

2. Within 4 hours of having consumed or having been under the influence of an intoxicating beverage, regardless of its alcohol content.

Thurk was conscious and otherwise capable of withdrawing his consent. We therefore conclude that when Thurk submitted to a blood test, he was not submitting to a test under the statute.

Nonetheless, Thurk contends that he still was entitled to an alternate test. Section 343.305(5)(a), STATS., addresses the procedure for administering an alternate test under the implied consent statute. The pertinent portion of this statute reads as follows:

> If the person *submits to a test under this section*, the officer shall direct the administering of the test. . . . *The person who submits to the test is permitted, upon his or her request, the alternative test* provided by the agency under sub. (2) or, at his or her own expense, reasonable opportunity to have any qualified person of his or her own choosing

---

3. While possessing an intoxicating beverage, regardless of its alcohol content. This subdivision does not apply to possession of an intoxicating beverage if the beverage is unopened and is manifested and transported as part of a shipment.

(b) A person may be charged with and a prosecutor may proceed upon complaints *based on a violation of this subsection and sub. (1)(a) or (b) or both, or sub. (1)(a) or (5)(a), or both, for acts arising out of the same incident or occurrence.* If the person is charged with violating this subsection and sub. (1) or (5), the proceedings shall be joined. If the person is found guilty of violating both this subsection and sub. (1) or (5) for acts arising out of the same incident or occurrence, there shall be a single conviction for purposes of sentencing and for purposes of counting convictions. This subsection and subs. (1) and (5) each require proof of a fact for conviction which the others do not require. Each conviction shall be reported to the department and counted separately for purposes of suspension or revocation of the operator's license and disqualification.

The language in para. (7)(a) is expressly limited to commercial drivers, and the language in para. (7)(b) addresses the issue of whether a driver may be charged under para. (7)(a) if he or she has been charged under subsecs. (1) or (5).

administer a chemical test for the purpose specified under sub. (2). *If the person has not been requested to provide a sample for a test under sub. (3)(a) or (am), the person may request a breath test* to be administered by the agency or, at his or her own expense, reasonable opportunity to have any qualified person administer any test specified under sub. (3) (a) or (am).

(Emphasis added.)

This provides a person who submits to a test under the implied consent statute, *i.e.*, § 343.305(3), STATS., with the right to request an alternate test. *See State v. McCrossen*, 129 Wis. 2d 277, 385 N.W.2d 161 (1985), *cert. denied*, 479 U.S. 841 (1986); *State v. Walstad*, 119 Wis. 2d 483, 351 N.W.2d 469 (1984). This alternate test is critical, because it affords the defendant "the opportunity to scrutinize and verify or impeach the results of the [initial] test administered by enforcement authorities." *Walstad*, 119 Wis. 2d at 527, 351 N.W.2d at 491. We have held that because the denial of this right prevents the potential discovery of evidence relating to the accuracy of the prior test, the appropriate sanction should be the suppression of the prior test results. *See State v. Renard*, 123 Wis. 2d 458, 461, 367 N.W.2d 237, 238–39 (Ct. App. 1995).

Thurk contends that he was denied his right to an alternate test when Sergeant Morey declined to administer the breathalyzer test. As a result, he argues that his blood test results should be suppressed. In support of his argument, Thurk relies primarily on *Walstad, Renard* and *McCrossen*.[2] However, the key distinction

---

[2] Thurk also relies on *State v. Disch*, 119 Wis. 2d 461, 351 N.W.2d 492 (1984), to support his assertion. Disch was the driver of an automobile involved in a serious accident on August

669

between these cases and this case is that in *Walstad,
Renard* and *McCrossen*, the defendants were placed
under arrest before they submitted to a test of their

8, 1980. She was transported from the scene of the accident to a
hospital where a small blood sample was taken. A blood test
revealed that her blood alcohol concentration was .121. Two
days later, a passenger in Disch's automobile died as a result of
the accident. On January 29, 1981, Disch was charged with
homicide by intoxicated use of a motor vehicle.

Prior to her arraignment, Disch filed a motion to inspect the
blood sample and also moved to suppress the results of the test.
On April 16, 1981, the tube containing the blood sample was
turned over to the defense expert for testing. Eight days later,
the defense expert reported that the few drops of blood remain-
ing in the sample tube were insufficient to perform a test for
alcohol. Disch renewed her motion to suppress the blood test on
the grounds that she was deprived of her right to exercise her
right of discovery. The trial court granted the motion and we
affirmed. The supreme court, however, reversed.

Thurk points to a sentence in the court's opinion in which it
held that, "Due Process in respect to the blood alcohol test is
afforded the defendant because she had the right to have a
second test for intoxication conducted by the police or, alterna-
tively, another or different alcohol test conducted by a person of
her own choosing . . . ." *See Disch*, 119 Wis. 2d at 463, 351
N.W.2d at 493. He infers from this language that interference
with the right to an alternate test is interference with a due
process right, and not merely a "procedural right." However,
this inference is made out-of-context, because later on the same
page of the opinion, the court stated:

> Additionally, there is no evidence whatsoever to show that, at the
> time the demand was made for the production of the blood sample,
> the sample could have produced a test result that either would
> verify or disprove the original test. There was no evidence produced
> by the defendant to show that the sample was testable for alcohol
> content. *We emphasize, however, that whether or not the sample
> was testable is irrelevant to the question of whether due process can
> be afforded only when the blood sample is produced by the state at*

670

blood, breath, or urine, which meant that they were entitled to an "alternate" test. Thurk, on the other hand, never submitted to a test under § 343.305(3), STATS., and therefore is not entitled to an alternate test under § 343.305(5)(a).

Section 343.305(5)(a), STATS., includes a provision which states that a person who has not been requested to provide a sample under § 343.305(3)(a) or (3)(am) may request a breath test. The language of the statute, however, indicates that this breath test, if requested, would be the defendant's first test under the implied consent statute; therefore, it cannot be an "alternate" test as that term is used in § 343.305(5)(a). Rather it is an optional tool for drivers, like Thurk, to use to dispel an officer's suspicion that he or she is driving or operating a motor vehicle while intoxicated. There, however, is no authority holding that the trial court is required to suppress evidence if an officer fails to provide a

> the defendant's request. Due process does not rest on so narrow a basis.

*See id.* (emphasis added).

In other words, while the court concluded that due process may be provided through the defendant's ability to a request a second test, it also concluded that due process was not denied because the defendant was unable to obtain a second test of her blood to verify the results of the initial test.

Furthermore, the facts in *Disch* are distinguishable from the facts in this case. Most notably, there is significant difference as to the timing and circumstances surrounding the request for a second test. Thurk allegedly requested a breath test within hours of voluntarily submitting to a blood test. Disch, on the other hand, requested a retest of the same blood sample that was taken eight months earlier. We therefore reject Thurk's assertion that *Disch* influences the outcome in this case.

driver with this breath test, and we decline to create such authority under the facts in this case.

## CONCLUSION

■ When Thurk agreed to submit to a blood test, he consented to a Fourth Amendment search and seizure of his blood, not a test under the implied consent statute. *See* § 343.305(3)(c), STATS.; *State v. Zielke*, 137 Wis. 2d 39, 403 N.W.2d 427 (1987). As a result, he cannot request an "alternate" test under § 343.305(5)(a), STATS. Section 343.305(5)(a) allows a defendant who has not submitted to a test under § 343.305(3)(a) or (3)(am) to request a breath test, which Thurk apparently did, and Sergeant Morey denied that request. However, unlike a denial of an alternate test, a denial of this breath test does not require the suppression of other properly-acquired evidence. Accordingly, we affirm the trial court.

*By the Court.*—Judgment affirmed.